**STATE of Missouri, Respondent,**

v.

**Wendell WILLIAMS, Appellant.**

No. 52484.

Supreme Court of Missouri,
Division No. 2.

Oct. 9, 1967.

J. Whitfield Moody, and J. Arnot Hill, Kansas City, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Charles C. Hatley Asst. Atty. Gen., New Madrid, for respondent.

STOCKARD, Commissioner.

Wendell Williams was found guilty by a jury of assault with a deadly weapon with intent to kill and sentenced to imprisonment for a term of twenty-five years. He has appealed from the ensuing judgment. At the trial and on this appeal defendant was represented by representatives of the Legal Aid and Defender Society of Greater Kansas City.

Defendant does not specifically attack the sufficiency of the evidence. The jury reasonably could find the occurrence of the following events. About 11:45 o'clock of the evening of November 13, 1965, Ruby Peltier was waiting at 37th Street and Prospect Avenue for a bus. A Plymouth automobile stopped, and defendant pointed a gun at her and told her to get into the automobile. She did so and the automobile moved on. Defendant then told Ruby he needed a lot of money, and she told him that she had only $35.00. Ruby noticed a police car was following and she began pounding on the rear window to attract attention, and when she did this defendant shot her twice in the stomach. The officer in the police car knew defendant and recognized him as the man in the rear seat of the automobile in front of him. The officer turned on his red light and siren and pursued the Plymouth. It collided with a utility pole and defendant jumped from the automobile, landing in "a prone position, spread-eagle, on the street," and after leaving his hat he ran away. The driver of the automobile, Richard Lee Warren, was arrested, and defendant was arrested about four hours later at his home. A few days later, when in jail, defendant obtained medical attention for an injured knee.

Defendant testified that about 8:00 o'clock that evening he had loaned his automobile to Richard Lee Warren. He admitted that the hat found at the scene was his, but he said he had left it in the automobile when he gave it to Warren. He also testified that at 11:00 o'clock that evening he met his wife and they ate at Mim's restaurant. He left the restaurant about one o'clock and went home. His sister was there watching television, and shortly thereafter he went to a service station and bought some cigarettes and then returned home. Defendant's witnesses supported his alibi, but with some rather material inconsistencies in their testimony.

Defendant's brief contains nine points, but in his reply brief he states that "after re-examination" of his and the State's

briefs he "abandons Points IV, V, VI, and VIII."

■ Defendant's first point is that "it was error for the State to argue that if the defendant were released a repetition of the offense would transpire." The record shows that in the closing argument the prosecuting attorney said this: "And what are we going to do? What should be done? Should we put him in jail for two years and put him back out to kill somebody?" Counsel for defendant objected and asked that the jury be instructed to disregard the statement. The court sustained the objection and instructed the jury as requested. Counsel then asked that the jury be discharged, and the trial court denied that request. The assignment of error in the motion for new trial, and the point in defendant's brief, does not present as error the refusal of the trial court to discharge the jury. However, the argument is to that effect.

Defendant cites State v. Groves, Mo., 295 S.W.2d 169; State v. Renfro, Mo., 408 S.W.2d 57; and State v. Satterfield, Mo., 336 S.W.2d 509. In the Groves case an objection to argument and a request that the jury be instructed to disregard the argument were both overruled. That case does not rule the situation we have here where the objection was sustained and the jury was instructed to disregard the argument. In the Renfro case the court impliedly sustained the objection to argument somewhat similar to that in this case, and it was stated on appeal that no further relief was requested. However, noting that there was but "an instance of a single breach" where the trial court's ruling served to divert the speaker, it was stated that "we do not believe the argument complained of was prejudicially erroneous." The Satterfield case pertains to argument alleged to have been based on excluded evidence. It does not rule the issue of defendant's contention here.

■ The control of arguments of counsel is largely within the discretion of the trial court, State v. Benjamin, Mo., 309 S.W.2d 602, 606, and the granting or refusal of a mistrial for improper argument lies largely within the discretion of the trial court. State v. King, Mo., 334 S.W.2d 34, 40; State v. Hardy, 365 Mo. 107, 276 S.W. 2d 90, 95. There was no abuse of discretion in this case in view of the corrective action taken by the trial court.

Defendant's next point is that it was error to permit the introduction of testimony of an oral statement by him to the police because it was "not proved to be voluntary." As subsequently demonstrated, the record disproves this contention.

■ The statement of defendant referred to was made to Officer Swan after his arrest. The statement was not a confession of the offense charged nor was it a declaration against interest. It was offered in rebuttal by the State apparently on the ground that it conflicted with defendant's testimony at trial as to where he was at the time of the commission of the robbery. Assuming, but not deciding, that the rule announced in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.E.2d 908, requires a preliminary determination by the trial court that the above statement of defendant was voluntarily made, that requirement was met. After Officer Swan testified that he had talked to defendant, the trial court conducted a hearing out of the presence of the jury on the issue of the voluntariness of defendant's oral statement. At this hearing the police officer testified that before defendant made the statement he had advised defendant that he did not have to make a statement, that if he did it could be used against him in court, and that he could call a lawyer. In this hearing out of the presence of the jury the defendant then testified, and we shall set forth his entire testimony.

"Q. [By defense counsel] You have heard Detective Swan's testimony, have you not?

"A. Yes.

"Q. Now, tell His Honor whether or not you were advised that you did not have to make a statement, if you did it could be used in court, and you could call a lawyer, by Detective Swan, before you told him anything, whether or not he told you these things.

"A. He did not tell me those things. I already knew them, because I had been in jail several times before that, and I don't never say nothing, I always call my lawyer because I had——.

"Q. Did you call your lawyer?

"A. Yes."

The trial court specifically found that the statement of defendant to Officer Swan was voluntarily made. On this appeal defendant presents nothing which indicates that the finding was wrong, and the record clearly establishes that the finding was correct.

■ Defendant's third point is that it was error "to permit testimony of his previous arrest unrelated to the offense for which he was being tried." The police officer who arrested defendant testified about the arrest and was cross-examined extensively. On redirect examination he was asked "How did you happen to know where he lived?" The officer answered as follows: "I arrested—he had been arrested once before at 1604 East 11th." Defense counsel objected to "the question and response" and asked that the answer "be stricken" and that the jury be discharged. The trial court sustained the objection and instructed the jury to disregard the answer, but it denied the request to discharge the jury. As was true in connection with defendant's first point, the assignment of error in the motion for new trial and the point in defendant's brief pertaining to this incident does not present as error the refusal of the trial court to discharge the jury, but the argument includes this contention.

Defendant cites various cases which hold that as a general rule separate and distinct crimes by the defendant cannot be shown, with certain exceptions, and proof of conduct not related to the offense charged which subjects defendant to ill repute cannot be shown. See State v. Anderson, Mo., 384 S.W.2d 591; State v. Slaten, Mo., 252 S.W.2d 330. In view of the cross-examination of the arresting officer, the reason the officer knew where defendant lived was not totally irrelevant. However, assuming that even under these circumstances the reference to the previous arrest was improper, the trial court did not, as asserted in the point, "permit testimony of his previous arrest." The testimony was stricken out by the court and the jury was instructed to disregard it. Also, whether a mistrial should be declared in a circumstance such as this is a matter which rests largely within the discretion of the trial court. State v. Hadley, Mo., 249 S.W.2d 857; State v. Baker, Mo., 293 S.W.2d 900; State v. Ruyle, Mo., 318 S.W.2d 218. In view of the corrective action taken by the trial court, if any such action was required, we find no abuse of discretion.

Defendant's seventh point is that "it was error to characterize the appellant as 'Whizzo' as there was no proof of such appellation."

In his opening statement to the jury the prosecuting attorney referred to defendant as "Wendell Williams, also known as 'Whizzo' Williams." The defendant interrupted and said, "My name is Wendell." On cross-examination, after asking defendant if he was Wendell Williams, the prosecuting attorney asked this: "You are also known by your friends as 'Whizzo' Williams, is that not correct?" Defendant answered, "That is not correct." In oral argument by the prosecution, reference was made to "Wendell 'Whizzo' Williams." No objection was made at any time, and no action was requested from the trial court.

The name "Whizzo" is not necessarily derogatory. As noted, no objection was made, and no action by the trial court was requested. The alleged error was not presented to the trial court for corrective action, and since this obviously does not constitute plain error within the meaning of Supreme Court Rule 27.20(c), V.A.M.R. there is nothing before this court preserved for appellate review. State v. Carter, Mo., 399 S.W.2d 74; State v. Eaton, Mo., 394 S.W.2d 402.

Defendant's last point is that the trial court erred "in refusing [his] request that other counsel be appointed to defend him, thereby denying him rights guaranteed ·by the Sixth Amendment of the Constitution of the United States." This contention was not presented in the motion for new trial, but it is presented in the brief in "Anticipation of it being made hereafter in a motion to set aside his sentence under Supreme Court Rule 27.26." Denial of a constitutional right of counsel would constitute plain error affecting substantial rights within the meaning of Supreme Court Rule 27.20(c). Therefore, we shall rule this issue on this appeal.

On March 16, 1966, counsel for defendant, apparently privately employed and of defendant's selection was permitted to withdraw upon request, and "J. W. Moody and Associates," which constitutes The Legal Aid and Defender Society of Greater Kansas City, were appointed as counsel. Trial started on May 17, 1966, after the parties announced ready for trial, and defendant was represented by Mr. James H. Harrington, an associate of J. W. Moody, who was an experienced trial lawyer in criminal cases.

At the noon recess after four witnesses had testified, and apparently after the State had put on all the evidence it had then contemplated to offer, defendant told the court that he wanted "to have some witnesses in this case that don't seem to be subpoenaed. For instance, the arresting officer, Cecil Stockdale, * * *." The court advised defendant he could use the power of subpoena, and the prosecuting attorney advised defendant that he would bring Officer Stockdale and call him as a witness if the defendant would agree that he could be indorsed on the information. Defense counsel said that he would agree "if this is what Mr. Williams feels is in his best interest," but he added that he had discussed this matter with defendant and that it was his "opinion it would not be in his best interest." After further discussion defense counsel stated that he would "defer to his [defendant's] view." Defendant then stated that "There were some more witnesses that wasn't on my sheet that I didn't subpoena because I didn't think they were involved in this, but I see since the time they brought out, there are about 10 or 15 witnesses." The court told defendant to talk to his attorney about that. After the recess, Officer Stockdale was called as a witness for the State. He testified only as to the circumstances of the arrest. At the conclusion of his direct testimony defense counsel advised the court, out of the hearing of the jury, that "the defendant has just advised me I cannot defend him against his will, and unless he gets a recess and an opportunity to tell the court he doesn't want to continue with the trial." Counsel added that he was "ready, willing and able to continue." The defendant then told the court that he "would like to get a recess because I haven't talked to my lawyer since he has been assigned to my case but one hour, and I hardly think that is enough time for him to try this case, and there is a lot he don't know about this case. And I would like to get a continuance until he knows more, until we can come to a conclusion on how the case is to be tried." Defense counsel then related that a staff member of The Legal Aid and Defender Society had conferred with defendant, names of prospective witnesses had been obtained and some had been subpoenaed, a comprehensive report had been prepared, and he had discussed the case with defendant and was ready to proceed with the

trial. When the court asked defendant how much time he wanted to talk to his counsel, he stated he wanted a continuance for a week. Defendant also mentioned that he wanted a witness by the name of Newton, but an investigator for The Legal Aid and Defender Society stated that he had not located this person to serve a subpoena on him, and defense counsel stated that he did not believe this witness's testimony "would be to his best interest." It also developed that two other witnesses that defendant stated at trial he wanted to substantiate his alibi had been interviewed and both stated that they did not know defendant. Defendant then told the court: "I don't want this man to defend me unless we have more conferences together." The court said that it was its "view that this request of the defendant is frivolous" and that it was made "for the purpose of either delaying the trial or causing a mistrial," and directed that the trial proceed. Defendant then asked: "You mean you [are] going to make him defend me against my will and my right to have a choice of attorney? If I don't think he is defending me fully and properly you mean you are going to make him defend me against my will?" The trial court stated that counsel had been appointed by the court, and "He is to defend you."

The point in defendant's brief is that the court erred in refusing to appoint other counsel, but from what we have above set out it is apparent that at about halfway through the trial defendant became dissatisfied with his lawyer, or perhaps with the course of the trial, and requested a continuance so he could confer with the counsel he had. However, he advanced nothing to indicate the need of additional conferences, and the trial court indicated that reasonable time would be granted, but not one week.

 The constitutional right to counsel does not mean that an accused is entitled to any particular attorney, or that during trial he can arbitrarily discharge his at-torney without reason or justification. Staff members of The Legal Aid and Defender Society of Greater Kansas City had investigated defendant's case, and a file and report had been made to his experienced and highly qualified trial attorney who had interviewed defendant and the witnesses. In his professional judgment, defense counsel considered himself ready for trial, and when he announced ready at the call of the case, as far as is shown by the record, defendant made no protest. Supreme Court Rule 4.22 admonishes that the conduct of a lawyer before the court should be characterized by candor and fairness. "Thus, while a prisoner, indigent or otherwise, is entitled to his lawyer's best efforts, the lawyer is not required to surrender his integrity and self-respect and make claims known to be untenable or wholly false." State v. Ball, Mo., 408 S.W. 2d 17, 19. Defense counsel in this case was faced with a difficult situation. Witnesses suggested by defendant to establish his alibi denied knowing him. We have not set out the testimony, but the defense witnesses used testified inconsistently, and defendant affirmatively admitted from the witness stand that he had lied to police officers as to his whereabouts on the night of the robbery, and that in his testimony he had lied before the jury. Our examination of the record discloses a most commendable performance by counsel for the defense. The contention that defendant was denied his constitutional right of counsel is completely without merit.

We have examined those parts of the record as required by Supreme Court Rule 28.02, V.A.M.R., and find no error.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.