UNITED STATES of America,
Plaintiff-Appellee,

v.

Wilbert C. JACKSON, Defendant-
Appellant.

No. 72–1250.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1972.

Rehearing Denied March 8, 1973.

Morton A. Orbach, Miami, Fla. (Court-Appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Charles O. Farrar, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before RIVES, WISDOM and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

Wilbert Jackson was indicted on six counts of violating 18 U.S.C. § 495.[1] Three counts charged him with falsely altering United States Treasury checks by increasing their stated amount. Three other counts charged him with uttering and publishing the altered checks, with knowledge that they had been altered and with intent to defraud the United States. After a jury trial he was found guilty on all counts, and received six concurrent five-year sentences. On this appeal Jackson contends that: (1) The trial court made prejudicial comments during defense counsel's closing argument; (2) The trial court erred in its instruction to the jury on the question of leniency; (3) His trial on two of the six counts of the indictment placed him in double jeopardy. We affirm the conviction.

I.

The three checks which Jackson was accused of altering were checks from the Veterans Administration made payable to him for veterans disability benefits. He had been receiving $23 per month in disability benefits since June 1969 for a

back injury incurred while serving with the Air Force. Evidence at the trial showed that the three checks had been originally issued in the amounts of $23, $23, and $4; that the amounts had been altered to $823, $823, and $804; and that Jackson had cashed them for the increased amounts.

Jackson did not deny that the checks had been altered, or that he had endorsed them. He testified that the checks had been payable in the increased amounts when he had received them, and that he had been unaware at the time that they had been altered. He stated that he had filed a claim for increased benefits in February 1970, and had assumed that the increase in the size of his checks was the result of retroactive payments on this supplemental claim. Jackson produced an acknowledgment card from the Veterans Administration as evidence of his claim for increased benefits. His wife also testified that the checks had carried amounts in excess of $800 when received, and that she had mailed Jackson's claim for increased benefits. The government called a Veterans Administration official as a rebuttal witness. This witness, a veterans benefits specialist, testified that Jackson's file contained no record of an application for increased benefits before his receipt of the three checks. He also testified that the card introduced by Jackson was simply an acknowledgment of his original application for benefits in April 1969, not of a claim for an increase in benefits.

Jackson first argues that the trial court improperly limited the scope of de-

---

1. Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or

Whoever transmits to, or represents at any office or officer of the United States, any such writing in support of, or in relation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited—

Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 495 (1972).

fense counsel's closing argument by forbidding him from arguing that the Veterans Administration records, which contained no evidence of an application for increased benefits, were incomplete.[2] He points out that in closing argument defense counsel may discuss legitimate inferences deducible from the facts

2. The trial judge engaged in the following colloquy with defense counsel over the propriety of this argument:

Mr. Orbach: Now, there has been something said here about the VA records, because that is the clincher that really establishes his guilt. Now, the government man from the VA says that the records show that in April, 1969, the claim was originally established. The next claim they got was December, 1970.

I said to him, "All right, if those are your records, that you have" . . . remind you that they get these things from the hospital, they are supposed to send them; some they do send and some they do not send . . .

Mr. Farrar: Objection. There is no information as to whether some were sent or some were not sent.

The Court: None whatever. That is just purely argument.

Mr. Orbach: Well, your Honor, there was testimony . . .

The Court: Not a bit of evidence that some of the checks were not sent.

Mr. Orbach: Not the checks, the VA records.

The Court: None that the VA records are wrong.

Mr. Orbach: Your Honor, there was testimony that some records were not sent, at times, from the VA Hospital to the VA.

The Court: Oh, yes; but nothing about these records.

Mr. Orbach: That is about what I was talking, your Honor.

The Court: Well, you intimated that some of these records were missing.

Mr. Orbach: Well, your Honor, we certainly do not know if the entire records are complete.

The Court: We do not know many things.

Mr. Orbach: That is correct.

The Court. Most things we do not know; but that has nothing to do with what we are dealing with here.

Mr. Orbach: We certainly believe it is, if those VA records are incomplete.

The Court: Then if you believed that the VA records were missing in this case, why did you not dig them up? You had an opportunity. You could have subpoenaed them.

Mr. Orbach: Your Honor, the VA records were here.

The Court: Well, then, I say it is your duty to find out, not to guess about them.

Let us not reflect now on the VA. Let us go ahead in this case.

Mr. Orbach: I think I have the right to reflect upon the VA, your Honor.

The Court: All right, you go ahead and do it, and I will say this: That there is not one scintilla of evidence in any of the records in this case pertaining to this particular man that any are missing. I will say further, that you are not at liberty to guess at what does not exist in this or any other case.

Mr. Orbach: But this jury, your Honor, is entitled to proper inferences from the facts of this case.

The Court: I will say that there are no proper inferences, because there is not some evidence of missing records. That is not an inference. Let us stick to the case. It is difficult enough, without going out of it.

Mr. Orbach: Yes, your Honor, I agree with the Court, in the respect that it is difficult.

Your Honor, I would like to voice my objection . . .

The Court: Let me object to your conduct at the moment. I see that you are apparently trying to bring something in this case that is not in here. That is bad conduct.

The Court: Ladies and gentlemen of the jury, pay no attention to the argument between counsel and the Court. It is only on technical matters. Counsel has been before me for many, many years now. He is an excellent man. I am sure that if he did make a mistake, it was a mistake that was innocently made.

Mr. Orbach: If the jury please, getting into the VA records themselves: There is in the VA records, a record of the defendant appearing in November, 1969, wherein he asked for the renewal of the prescription for medication, which was for his back. Now, that is a date prior to the December date, when the government says he first made a claim. The December date was December 1970, regarding then his eye. In September, 1970, it is a record that the VA has, which shows that he was complaining at the hospital about his back; in which he states from the records that the man took, that he could not hold a job, and

presented at the trial. See Luttrell v. United States, 5 Cir. 1963, 320 F.2d 462; United States v. Dibrizzi, 2 Cir. 1968, 393 F.2d 642.

■ Trial judges may comment on the evidence and express opinions. See Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Kyle v. United States, 5 Cir. 1968, 402 F.2d 443; Bursten v. United States, 5 Cir. 1968, 395 F.2d 976; Moody v. United States, 5 Cir. 1967, 377 F.2d 175; Hellman v. United States, 5 Cir. 1964, 339 F.2d 36; Lott v. United States, 5 Cir. 1956, 230 F.2d 915, cert. denied, 1956, 351 U.S. 953, 76 S.Ct. 848, 100 L.Ed. 1477. Trial judges may admonish counsel who make improper or repetitious comments. See Gordon v. United States, 5 Cir. 1971, 438 F.2d 858; United States v. Caracci, 5 Cir. 1971, 446 F.2d 173; Bursten v. United States, 5 Cir. 1968, 395 F.2d 976, 983. Such comments from the bench do not constitute reversible error unless they deprive the defendant of his right to an impartial trial.[3]

■ The trial judge's comments in the present case did not deprive Jackson of his right to an impartial trial. Defense counsel's flat assertion that the Veterans Administration records were incomplete found at best scanty support in the record. It was substantiated only by the self-serving testimony of Jackson and his wife, and was strongly rebutted by the government. It was therefore not prejudicial to prohibit defense counsel from placing so remote an inference before the jury. The trial judge, moreover, specifically instructed the jury to disregard the interchange between himself and Jackson's lawyer. In these circumstances this was sufficient to protect the impartiality of the proceeding. Cf. Kyle v. United States, 5 Cir. 1968, 402

F.2d 443, 445; Moody v. United States, 5 Cir. 1967, 377 F.2d 175, 180.

## II.

Shortly after the jury retired to consider a verdict, the jurors forwarded a question to the court inquiring whether leniency would be permissible in view of the defendant's unblemished record. After a conference with counsel, the trial judge recalled the jury to the courtroom and addressed the jury as follows:

"THE COURT: Ladies and gentlemen of the jury, I have received your note, which is, in effect, is leniency, or a finding in favor of leniency in the case of guilt proper. The answer is no.

That is the Judge's function. It is up to me to determine whether leniency should be granted in the case of a conviction.

The only thing you could possibly do is recommend to the Court, if you find the man guilty, that the Court be lenient with the defendant on account of his youth and previous reputation. That is all. You can send that note, and that is all.

By the way, I wish you could find all the defendants guilty, and punish them, and everything else. That would relieve me of quite a bit of work. That is not the law, however. The law is that the Court instructs the jury to find the man guilty or not guilty; and then the Court must finally grant leniency if, in the Court's opinion, leniency is justified."

The judge then held a bench conference, during which Jackson's lawyer objected that the effect of the instruction was to encourage the jury to return a guilty verdict in return for a promise of leniency for Jackson. During the bench

---

he was complaining about his back. However, the VA representative was asked whether he had a record of any claim having been filed in September, 1970, regarding his back, when he was saying he could not hold a job. He said no, he had no record of the claim.

3. Gordon v. United States, 5 Cir. 1971, 438 F.2d 858, 864; Bursten v. United States, 5 Cir. 1968, 395 F.2d 976, 983; Johnson v. United States, 8 Cir. 1966, 356 F.2d 680, 683, citing Zebouni v. United States, 5 Cir. 1955, 226 F.2d 826.

conference the jury foreman handed the clerk a verdict finding Jackson guilty on all counts. The court then addressed the jury again:

> "The answer to your question is no, you have no jurisdiction on the question of leniency, one way or the other. I have got that knotty problem if you find the man guilty. Now, take this back in view of what I have said, and consider what your verdict now should be."

Following this instruction the jury retired. Within two minutes the jury re-entered the courtroom with a guilty verdict.

On this appeal Jackson renews his objection to the court's instructions. He contends that the court simply should have told the jury that it had no jurisdiction whatever on the question of leniency, and that its concern was solely with the defendant's guilt or innocence. He argues that, by suggesting that the jury could recommend leniency, the trial judge was soliciting a guilty verdict and expressing an opinion as to Jackson's guilt.

■ We must consider the court's charge as a whole, not phrase by phrase.[4] Viewing the charge on leniency as a whole, we conclude that the trial court did not err. The court made it clear that the jury could not return a finding in favor of leniency. While the court stated that the jury could recommend leniency, it also made it clear in unequivocal terms that the court, not the jury, made the ultimate determination as to punishment. Any misunderstandings on the part of the jury must have been laid to rest with the court's second instruction, which plainly stated that the jury had no power whatever over the question of leniency.

■ In extreme circumstances, where a jury is hopelessly deadlocked, an in-

struction by the court that the jury may recommend leniency can be so conducive to a compromise verdict as to be reversible error. In United States v. Davidson, 6 Cir. 1966, 367 F.2d 60, the jury's deliberations extended over parts of three days. On the second day, after the jury reported disagreement, the court gave the jury an *Allen*, or "dynamite," charge.[5] But the dissenting jurors remained intractable until, after two hours of deliberations on the third day, the jury asked the court about leniency. The court responded that the jury could recommend leniency, though the recommendation would not bind the court, and within half an hour the jury returned a guilty verdict. The Sixth Circuit held that this instruction was prejudicial error since it had so obviously broken the jury's deadlock.[6]

In the present case there is no evidence of a jury deadlock or of other special circumstances. The jury deliberated for only a little more than half an hour, and gave no indication that it was unable to reach a decision. After the court's second instruction, making it absolutely clear that the jury had no power on the question of leniency, the jury required only two minutes to reconfirm its verdict of guilty. However the jury may have understood the court's initial instruction, it is apparent that the instruction had no influence one way or the other on the verdict. In giving the instruction the court did not commit error prejudicial to Jackson. See Harris v. United States, 5 Cir. 1957, 243 F.2d 74, cert. denied, 1957, 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed.2d 33; Gariepy v. United States, 6 Cir. 1955, 220 F.2d 252, cert. denied, 1955, 350 U.S. 825, 76 S.Ct. 53, 100 L.Ed. 737.

■ We find no reversible error in the trial court's judicial aside to the effect that "I wish you could find all the defendants guilty, and punish them, and

---

4. Williams v. Wainwright, 5 Cir. 1969, 414 F.2d 806; January v. United States, 5 Cir. 1969, 409 F.2d 31; Beck v. United States, 5 Cir. 1963, 317 F.2d 865, cert. denied, 1964, 375 U.S. 972, 84 S.Ct. 480, 11 L.Ed.2d 419.

5. For an extensive discussion of the *Allen* charge, see Judge Goldberg's opinion in United States v. Bailey, 5 Cir. 1972, 468 F.2d 652.

6. 367 F.2d at 63.

everything else." The trial judge made it clear that this aside was not a statement of the law. And it does not appear that this remark had any influence on the verdict.

### III.

Jackson objects to his prosecution for altering and uttering one of the three checks, received by him in September 1970, on the ground that the State of Florida had already instituted criminal proceedings against him for uttering the same check. His subsequent federal prosecution, he contends, placed him in double jeopardy in violation of the Fifth Amendment.

██ There is no merit to this contention. An act denounced as a crime by both federal and state sovereignties is an offense against the peace and dignity of both, and may be punished by each. Jackson's federal prosecution was not barred by his prior state prosecution for the same act.[7]

The judgment of the district court is affirmed.

7. See Abbate v. United States, 1959, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729; Bartkus v. Illinois, 1959, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684; United States v. Lanza, 1922, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314; Fox v. Ohio, 1847, 46 U.S. (5 How.) 410, 12 L.Ed. 213; Hill v. United States, 5 Cir. 1971, 452 F.2d 664.