STATE of Missouri, Plaintiff-Respondent,

v.

Ernest TURLEY, Defendant-Appellant.

No. 34965.

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 6, 1974.

Motion to Transfer to Supreme Court
Denied Dec. 6, 1975.

Application to Transfer Denied
Feb. 10, 1975.

Fenlon & Fenlon, Latney Barnes, Mexico, A. H. Juergensmeyer, Warrenton, Thomas E. Wack, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Ellen S. Roper, David Robards, Asst. Attys. Gen., Jefferson City, Thomas I. Osborne, Pros. Atty., Mexico, for plaintiff-respondent.

DOWD, Chief Judge.

Defendant was convicted of robbery in the first degree under Section 560.120, RSMo 1969, V.A.M.S. His punishment under the Second Offender Act (§ 556.280, RSMo 1969) was assessed at twenty years imprisonment in the custody of the State Department of Corrections. We affirm.

Shortly after noon on June 11, 1970, the Laddonia State Bank was robbed of approximately $13,000 by two armed men wearing stocking masks. One of the robbers herded the employees behind the counter and forced an employee to fill a sack with money from the cash drawers.

The second robber remained in the bank lobby with gun drawn. The two bandits

made a successful getaway. A few hours later police located a burned-out light green 1959 Cadillac about a mile from the bank.

F.B.I. agents, meanwhile, arrived at the bank and showed the four bank employees several photographs of suspects. Three employees stated a photograph of defendant strongly resembled the second robber.

F.B.I. agents arrested defendant in St. Louis on June 24, 1970. No gun or stolen money was found in defendant's possession. On June 26, 1970, two bank employees identified defendant in a St. Louis police lineup. Also identifying defendant at this lineup were two other Laddonia residents. Charles Crow had noticed a green 1959 Cadillac in Laddonia the day before the robbery; he remembered defendant as the driver of the Cadillac. The evening of the robbery Crow identified the burned-out car as the Cadillac he had seen in town the previous day; that same evening he identified defendant from a photograph as the driver of the Cadillac.

The other Laddonia resident present at the lineup was Wanda Garnett, who was working at a grocery store near the bank the day of the robbery. After the robbery she saw defendant's photograph in a local newspaper and recognized him as a man who had purchased cigarettes from her a couple hours before the robbery.

On July 1, 1970, a federal grand jury charged defendant with robbing the Laddonia State Bank, in violation of 18 U.S.C. § 2113(a) and (d). Defendant was acquitted of the federal charge in November 1970, after a trial in which the four bank employees positively identified the defendant as one of the bank robbers. There was other incriminating identification testimony against defendant by Mr. Crow and Ms. Garnett.

On January 4, 1971, the Prosecuting Attorney of Audrain County filed an information charging defendant with robbery in the first degree by means of a dangerous and deadly weapon. §§ 560.120 and 560.135, RSMo 1969. At the subsequent state trial the same six witnesses again identified the defendant. As said the jury found the defendant guilty of robbery in the first degree and he appeals.

■ Defendant's first contention on appeal is that his conviction in state court offends the Constitutions of both Missouri and the United States. We pose the question: Can a defendant who is acquitted of a federal charge of bank robbery be subsequently tried and convicted in state court for robbery? The answer is yes.

In 1959, the United States Supreme Court handed down two cases dealing with successive state and federal prosecutions. One was Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), which upheld a federal conviction following a state court acquittal based on substantially the same facts. The other case was Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), with basically the same facts as the case before us. Bartkus involved the robbery of a federally insured savings and loan association. Defendant had been acquitted in the federal courts, but convicted in the state court under the Illinois robbery statute. In an opinion by Justice Frankfurter, the Supreme Court held the conviction valid.

In analyzing the history of double jeopardy, the court made note of the early case of Fox v. Ohio, 5 How. 410, 12 L.Ed. 213 (1847), which held that both the federal government and the states have the power to impose criminal sanctions on conduct that offends the laws of each. The court also noted that one of the cases decided prior to Fox v. Ohio was the Missouri case of Mattison v. State, 3 Mo. 421 (1830), which held no plea in bar would prohibit the second prosecution in successive state and federal prosecutions.

In discussing the history since Fox v. Ohio, Justice Frankfurter in Bartkus noted that of the "twenty-eight States which have considered the validity of successive

state and federal prosecutions as against a challenge of violation of either a state constitutional double-jeopardy provision or a common-law evidentiary rule of *autrefois acquit* and *autrefois convict,* twenty-seven have refused to rule that the second prosecution was or would be barred." 359 U.S. at 134, 135, 79 S.Ct. at 684. Among the cases cited by the court under this point was the Missouri case of Ex parte January, 295 Mo. 653, 246 S.W. 241 (Mo. banc 1922). That case held that both the federal government and Missouri have concurrent jurisdiction to punish conduct which offends the laws of each.

In further explanation of its holding, the court in *Bartkus* discussed the principle of dual sovereignty: "Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both." 359 U.S. at 131, 79 S.Ct. at 682.

Defendant contends that the rule in *Bartkus* is not the law. He argues that part of the holding in *Bartkus* was that the Fifth Amendment did not apply to the states and that this position has now been overruled. Defendant relies on Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). *Benton* involved successive state prosecutions. *Benton* held that the double jeopardy prohibition of the Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton* did not overturn the dual sovereignty principle as reaffirmed in *Bartkus* and subsequently followed in other federal cases.

The question defendant specifically poses is does *Benton* overrule Bartkus v. Illinois? The answer to that question is that *Bartkus* is still the law today. Defendant's same argument was raised and rejected in the case of Martin v. Rose, 481 F.2d 658 (6th Cir.), cert. denied, 414 U.S. 876, 94 S.Ct. 86, 38 L.Ed.2d 121 (1973), wherein the court held: "Appellant urges that *Bartkus* no longer has continuing validity, particularly in view of . . . such cases as Benton v. Maryland, . . . We do not, however, read *Benton* as rejecting the result of *Bartkus*." 481 F.2d at 659.[1] The court in *Martin* further stated: "we find that the Federal courts still recognize and affirm the continuing validity of Bartkus.",[2] 481 F.2d 660, citing as an example, our own Eighth Circuit in United States v. Synnes, 438 F.2d 764 (8th Cir. 1971), where, after upholding the validity of *Bartkus* and *Abbate,* held that the defense of Double Jeopardy does not bar successive prosecutions where there is no identity of sovereigns.[3]

---

1. *See* Footnote #2 in Martin v. Rose, supra, at page 660: "We note further that the United States Supreme Court has recently denied certiorari in several cases questioning the application of the dual sovereignty doctrine to consecutive federal and state prosecutions. Bechtel v. New Jersey, cert. denied, 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 61 (1971); Colonial Pipeline Co. v. New Jersey, cert. denied, 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 61 (1971); Feldman v. New Jersey, cert. denied, 404 U.S. 865, 92 S.Ct. 76, 30 L.Ed.2d 109 (1971); Jacks v. New Jersey, 404 U.S. 865, 92 S.Ct. 76, 30 L.Ed.2d 109 (1971); Leuty v. New Jersey, cert. denied, 404 U.S. 865, 92 S.Ct. 77, 30 L.Ed.2d 109 (1971)."

2. Citing United States v. Jackson, 470 F.2d 684 (5th Cir. 1972); United States v. Canty, 152 U.S.App.D.C. 103, 469 F.2d 114 (1972); United States v. Crosson, 462 F.2d 96 (9th Cir. 1972); Goldsmith v. Cheney, 447 F.2d 624 (10th Cir. 1971); United States v. Smith, 446 F.2d 200 (4th Cir. 1971); United States v. Synnes, 438 F.2d 764 (8th Cir. 1971).

3. In Synnes, written by Judge Heaney, the defendant had been convicted in the federal court of possessing a firearm. The defendant had been previously convicted under a Minneapolis city ordinance for possession of a firearm. The evidence on which the convictions were based was identical. Defendant argues that the Minneapolis city court conviction bars the federal prosecution under the double jeopardy provision of the Fifth Amendment. The Court answered this argument as follows (page 773): "It is conceded by the government that the defendant's violation of the city ordinance resulted from the same conduct involved here and that the elements of proof in the two cases are identical.

Our conclusion: *Bartkus* has continuing validity; defendant's conviction is not unconstitutional.

■ Defendant next contends that the trial court erred in allowing certain statements to be made by the prosecuting attorney in his final argument. Defendant made no objection at the time the statements were made. The remarks complained of are as follows:

"Now, under our rules the jurors may take photographs into the jury room under certain conditions. I would be willing and agree that you may take these photographs into the jury room look at them yourselves; if the defense stands up and says they do not agree that you can take the photographs and look at them yourselves, then I feel sure that Judge Adams would permit you, if you requested the photographs, to do that. Nobody is going to force any photographs on you, but on behalf of the State I ask you to request these photographs and look at them . . . ."

During its deliberations the jury asked to have the photographs sent to the jury room. At that time the trial court, out of the hearing of the jury, asked if defendant had any objection to sending the photographs to the jury. The photographs had previously been introduced into evidence and had been examined by the jury.[4] Defendant answered that the earlier comments by the prosecuting attorney constituted an improper invitation to the jury.

Defendant's attorney was of the opinion that the statement inferred that the jury could have the photographs unless the defendant objected. Defendant moved for a mistrial, which was denied. Thereupon the court sent all the photographs to the jury.

■ We note initially that defendant made no objection to the prosecutor's statements at the time they were made. Objections to arguments by the State are required to be made at the time the objectionable statement is made or nothing is preserved for review. State v. Williams, 419 S.W.2d 49, 53 (Mo.1967); State v. Martin, 484 S.W.2d 179, 180 (Mo.1972).

■ However, even if the point had been preserved for review it is without merit. Furthermore, the granting or withholding of a new trial for improper argument is a matter for trial court's discretion. State v. Williams, *supra,* 419 S.W.2d at 50. An appellate court will not interfere with a ruling by the trial court unless the record shows that the trial court abused its discretion to the prejudice of appellant. State v. Hutchinson, 458 S.W.2d 553, 556, (Mo. banc 1970). Such statements must have been plainly unwarranted and clearly injurious. State v. Hutchinson, *supra.*

We have examined the record and do not find the prosecutor's comments to be so injurious as to warrant a finding of abuse of discretion by trial court in denying a mistrial. Defendant argues that the prosecut-

"However, the government contends, and we agree, that the defense of double jeopardy does not bar successive prosecutions where, as here, there is no identity of sovereigns. We believe the decision of the Supreme Court in United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922), specifically reaffirmed by Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), compels this result. See also, Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); United States v. Feinberg, 383 F.2d 60 (2nd Cir. 1967).

"The defendant suggests that Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), indicates a rejection, or at least

a weakening, of the "dual sovereign" concept. We doubt that it does. *Waller* decided only that successive municipal and state prosecutions were barred where the elements of the offense were identical. The Court reasoned that Florida municipalities were subdivisions of the State and not independent sovereigns." *Synnes* was vacated and remanded on other grounds, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972).

4. The photographs in question showed a line-up in which defendant appeared. One showed a group of men with stockings over their heads and the other showed the same group without the stockings.

ing attorney told the jury that they could have the photographs unless the defendant objected. On the contrary, the prosecutor said that the jury may only have photographs *under certain conditions*, and that if defendant objected, he felt sure *that Judge Adams would permit* the jury to look at them. This is not a case where the prosecutor told the jury that they had an absolute right to take exhibits to the jury room (thus distinguishing State v. Arrington, 375 S.W.2d 186 (Mo.1964)). We believe, contrary to defendant's contention, that the jury did not understand that they could have the exhibits unless the defendant objected, but rather, that it was within the discretion of the trial court. While we do not approve of the remarks by the prosecuting attorney, we cannot say they are so injurious that the trial court abused its discretion in denying defendant's motion for a mistrial. State v. McCreary, 504 S.W.2d 132 (Mo.App.1973).

■ Defendant's third contention on appeal concerns Instruction No. 4, which reads as follows:

"INSTRUCTION NO. 4

"All persons are equally guilty who act knowlingly (sic) together with a common intent in the commission of an offense, and an offense so committed jointly by two or more persons is the act of each and all, and whatever *any* does in furtherance of the unlawful act is in law the deed of each of such persons.

"If you find and believe from the evidence beyond a reasonable doubt:

"First, that on the 11th day of June, 1970, in the County of Audrain, State of Missouri, Ruby Hamlett, Freida Spradling and Frances Sutter were Laddonia State Bank employees who were in charge of a sum of money, and

"Second, that at that time and place mentioned in evidence the defendant Er-

nest Turley acting jointly with another took some of the money in the presence of Ruby Hamlett, Freida Spradling and Frances Sutter against the will of any one of them by putting that one in fear of immediate injury to her person, and

"Third, that the defendant acting jointly with another took the money with the intent to permanently deprive the owner, the Laddonia State Bank, and its employees of their right to the money and to convert it or any part of it to defendant's own use or the use of the person acting jointly with the defendant, then you will find the defendant guilty of robbery in the first degree.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense." (Emphasis added).

Defendant urges that the word "any" in the first paragraph was "subject to misinterpretation" by the jury. He contends that the instruction would have been saved from confusion by adding the words "co-conspirator or co-defendant or accomplice" to that part of the instruction, so that the instruction would read ". . . and whatever any co-conspirator or co-defendant or accomplice does in furtherance of the unlawful act is in law the deed of each such persons."

We do not agree that the instruction was confusing as given. Our close examination of the instruction convinces us that the instruction was clear and not subject to misunderstanding by the jury. Furthermore, the first paragraph of the instruction was approved in State v. Washington, 364 S. W.2d 572 [9] (Mo.1963), with the only difference being that the word used in *Washington* was "either" instead of "any." It is also noted that the paragraph complained of by defendant closely parallels the language of MAI–Cr 2.10 which was

not in effect at the time of the trial below.[5] The contention is without merit.

Defendant also challenges the instruction for failing to require a finding on the use of a dangerous and deadly weapon, contrary to the indictment which charged defendant with such use. Defendant does not argue that the instruction has to follow the exact language in the indictment, for it is well settled that a person can be charged by indictment with the more serious offense and convicted of a lesser included offense such as here—robbery in the first degree. Keeny v. State, 461 S.W.2d 731, 732 (Mo.1971). "The defendant cannot complain of the giving of an instruction on a lesser grade of an offense although the evidence tends to show guilt, if at all, of a higher grade." State v. Cox, 508 S.W.2d 716, 723–724 (Mo.App. 1974).

What defendant does argue is that in fixing sentence, the trial court could not have known whether the jury either found the presence of the deadly weapon, or not. The trial court expressly fixed the sentence pursuant to the jury's verdict of guilty to the instructed charge of robbery in the first degree and entered the sentence in accordance with the instruction and the jury's verdict. This in no way prejudices defendant, but on the contrary, removes the possibility of being either convicted or sentenced on the more serious crime.

Defendant's final contention charges that the trial court erred in overruling his motion for directed verdict for the reason that his alibi testimony placed him in St. Louis at the time of the robbery. This contention is without merit. This is not a contention that the evidence was insufficient to support a conviction but rather a contention that the judge was required to believe the alibi witnesses. Not so. Here there were four witnesses who identified the defendant as one of the bank robbers. Two other witnesses also gave incriminating identification testimony. Therefore, it is clear that the state's evidence was sufficient to support the verdict. The credibility of the witnesses is for the jury. State v. Bizzle, 500 S.W.2d 259, 261 (Mo.App.1973). The jury here disbelieved the alibi witnesses.

We need only add that in cases where there are two diametrically opposed theories presented in the case and where the facts and the evidence are in conflict, the matter is one for the jury to determine. State v. Nolan, 499 S.W.2d 240, 250 (Mo. App.1973).

No reversible error being shown, the judgment is affirmed.

SIMEONE, WEIER and KELLY, JJ., concur.

5. MAI–Cr 2.10 was not made effective until January 1, 1974. The only difference between the complained of language and the MAI–Cr 2.10 instruction is that the word "one" is used in place of "any".