Ernest TURLEY, Appellant,

v.

Donald WYRICK, Appellee.

No. 76-1538.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 10, 1977.

Decided April 14, 1977.

Eugene H. Buder and Benjamin Roth, American Civil Liberties Union, St. Louis, Mo., filing briefs, for appellant.

John C. Danforth (former Atty. Gen.), John D. Ashcroft, present Atty. Gen. and Nanette K. Laughrey, Asst. Atty. Gen., Jefferson City, Mo., filing brief, for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

PER CURIAM.

Ernest Turley appeals from the District Court's [1] denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

On June 11, 1970, two armed men robbed the Laddonia State Bank in Audrain County, Missouri, of approximately $13,000. On July 1; 1970, petitioner and one Haynes were indicted by a grand jury of the United States District Court for the Eastern District of Missouri and charged with robbing the bank in violation of 18 U.S.C. § 2113(a) and (d). Trial was had before a jury, which

---

1. The Honorable John K. Regan, United States District Court for the Eastern District of Missouri.

returned a verdict of not guilty on November 23, 1970.

On January 4, 1971, the prosecuting attorney of Audrain County, Missouri, filed an information charging petitioner with robbery in the first degree by means of a dangerous and deadly weapon, in violation of Mo.Rev.Stat. §§ 560.120 and 560.135. Petitioner moved to dismiss, alleging that his prior federal acquittal barred subsequent prosecution arising out of the same act. The motion was overruled, and the Missouri Supreme Court denied petitioner's application for a writ of prohibition. The Supreme Court denied certiorari. *Turley v. Adams*, 404 U.S. 1024, 92 S.Ct. 690, 30 L.Ed.2d 674 (1972). On March 30, 1972, a jury found petitioner guilty of robbery in the first degree, and he was sentenced to twenty years imprisonment. The conviction was affirmed on appeal. *State v. Turley*, 518 S.W.2d 207 (Mo.App.1974), *cert. denied*, 421 U.S. 966, 95 S.Ct. 1956, 44 L.Ed.2d 454 (1975).

On February 18, 1976, petitioner filed a petition for a writ of habeas corpus. The District Court denied the petition. *Turley v. Wyrick*, 415 F.Supp. 87 (E.D.Mo.1976). Petitioner now timely appeals and alleges three related, but distinct, grounds for relief: (1) that the "dual sovereignty" doctrine permitting successive state and federal prosecutions for the same act has been "eroded" by subsequent decisions and should be discarded; (2) that the doctrine of collateral estoppel enunciated in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), bars the state from relitigating issues decided in petitioner's favor at the prior federal trial; and (3) that the state is bound to observe the federal acquittal by virtue of the full faith and credit clause, U.S.Const., Art. IV, § 1, or by virtue of 28 U.S.C. § 1738.

## A. *"Dual Sovereignty"*

■ It is a basic principle of federalism that successive prosecutions by the state and federal governments do not constitute double jeopardy. *See Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684,

*rehearing denied*, 360 U.S. 907, 79 S.Ct. 1283, 3 L.Ed.2d 1258 (1959); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed.2d 314 (1922). This principle is based on the concept of "dual sovereignty"—*i. e.*, one act may constitute separate and distinct offenses against both the state and federal governments. Thus, a defendant who is prosecuted by both the state and federal governments is not twice put in jeopardy for the same offense.

Petitioner contends that subsequent cases have eroded the dual sovereignty doctrine. He places particular reliance upon *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which overruled *Bartkus v. Illinois* to the extent that *Bartkus* held that the Fifth Amendment guarantee against double jeopardy does not apply to the states. We find nothing in *Benton v. Maryland*, however, that casts a shadow on the validity of the dual sovereignty doctrine enunciated in *Bartkus* and *Abbate*.

Petitioner's reliance on *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); and *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), is similarly misplaced. None of those cases dealt with the double jeopardy issue in the context of successive federal-state prosecutions, and we find nothing in those cases which indicates that the Supreme Court no longer adheres to the dual sovereignty doctrine.

In decisions subsequent to *Waller, Elkins* and *Murphy*, this Court has consistently upheld the validity of the dual sovereignty doctrine. *Sappington v. United States*, 523 F.2d 858, 860 (8th Cir. 1975); *United States v. Johnson*, 516 F.2d 209, 212 & n.3 (8th Cir.), *cert. denied*, 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975); *United States v. Delay*, 500 F.2d 1360, 1362 (8th Cir. 1974); *United States v. Synnes*, 438 F.2d 764, 773 (8th Cir. 1971), *vacated on other grounds*, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972). The other circuits are in agreement.

*See, e. g., Martin v. Rose,* 481 F.2d 658, 659–60 (6th Cir.), *cert. denied,* 414 U.S. 876, 94 S.Ct. 86, 38 L.Ed.2d 121 (1973); *United States v. Jackson,* 470 F.2d 684, 689 (5th Cir. 1972), *cert. denied,* 412 U.S. 951, 93 S.Ct. 3019, 37 L.Ed.2d 1004 (1973); *United States v. Crosson,* 462 F.2d 96, 103 (9th Cir.), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 569, 34 L.Ed.2d 517 (1972); *Goldsmith v. Cheney,* 447 F.2d 624, 628 n.3 (10th Cir. 1971). We are apprised of no reason to depart from the sound logic of these cases.

### B. *Collateral Estoppel*

■ Petitioner's second contention is that the doctrine of collateral estoppel enunciated in *Ashe v. Swenson, supra,* barred the state's prosecution in the instant case. In *Ashe,* the Court held:

> [W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit.

*Id.* 397 U.S. at 443, 90 S.Ct. at 1194 (emphasis added). As the above-quoted language indicates, the flaw in petitioner's argument is that the collateral estoppel doctrine does not apply when different sovereigns and, thus, different parties are involved in the litigation. *United States v. Johnson, supra,* 516 F.2d at 211; *Ferina v. United States,* 340 F.2d 837, 839 (8th Cir.), *cert. denied,* 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965). *See also United States v. Brown,* 547 F.2d 438, 444 (8th Cir.1977); *United States v. Kills Plenty,* 466 F.2d 240, 243 (8th Cir. 1972), *cert. denied,* 410 U.S. 916, 93 S.Ct. 971, 35 L.Ed.2d 278 (1973).[2]

2. Petitioner's collateral estoppel argument fails for yet another reason. A defendant claiming an estoppel has the burden of proving what issues were necessarily decided in his favor at his prior trial. *See, e. g., United States v. Cala,* 521 F.2d 605, 608 (2d Cir. 1975); *United States v. Smith,* 446 F.2d 200, 203 (4th Cir. 1971). In the instant case, petitioner failed to introduce a transcript of his federal trial in support of his motion to dismiss the state charge. Such failure makes it impossible for a court to ascertain the issues previously determined, and thus fails to meet the burden of proof. *See, e. g., United States v. Smith, supra; United States v. Tierney,* 424 F.2d 643, 645 (9th Cir.), *cert. denied,*

### C. *Full Faith and Credit*

■ Petitioner's final contention is as unpersuasive as it is novel. He alleges that his prosecution by the State of Missouri amounted to a denial of full faith and credit to the federal judgment of acquittal. The federal judgment, however, only determined that petitioner did not violate 18 U.S.C. § 2113(a) and (d); it did not determine whether petitioner violated Mo.Rev. Stat. §§ 560.120 and 560.135. There was thus no denial of full faith and credit. The remainder of petitioner's allegation in this regard is merely a restatement of his collateral estoppel argument, discussed *supra.*

Having found no merit in petitioner's arguments, we affirm the order of the District Court.

LAY, Circuit Judge, concurring.

I concur in the result reached. I am bound by the numerosity of opinions in this circuit and elsewhere which construe *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), as barring a double jeopardy claim under the dual sovereignty doctrine.

Upon further reflection, however, I am not convinced that subsequent decisions [1] of the Supreme Court have not fully eroded *Bartkus* and *Abbate* and that the double jeopardy defense should be sustained under the facts of this case. Recent state court decisions have explored the question of successive federal-state prosecutions for the same crime and have found the underpin-

400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87 (1970); *United States v. Friedland,* 391 F.2d 378, 382 (2d Cir. 1968), *on remand,* 316 F.Supp. 459 (S.D.N.Y.1970), *aff'd,* 441 F.2d 855 (2d Cir.), *cert. denied,* 404 U.S. 867, 92 S.Ct. 143, 30 L.Ed.2d 111 (1971).

1. *See Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); and *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

nings of *Bartkus* and *Abbate* unconvincing. *See People v. Cooper*, 398 Mich. 450, 247 N.W.2d 866 (1976); *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971); and *State v. Fletcher*, 22 Ohio App.2d 83, 259 N.E.2d 146 (1970), *reversed*, 26 Ohio St.2d 221, 271 N.E.2d 567 (1971), *cert. denied sub nom., Walker v. Ohio*, 404 U.S. 1024, 92 S.Ct. 699, 30 L.Ed.2d 675 (1972).

The facts are significant here; they eloquently plead the petitioner's case. They serve to demonstrate the fallacy in barring the claim of double jeopardy under the dual sovereignty doctrine. The interests sought to be protected by the federal law are not substantially different than those sought to be protected by the state law. The result of applying the dual sovereignty doctrine in this case is that the interests of the state and federal government are amply protected and the interests of the individual are ignored. The double jeopardy clause was written for the protection of the individual not the state or federal government.

In the instant case around noon on June 11, 1970, the Laddonia State Bank was robbed of approximately $13,000 by two armed robbers wearing stocking masks. The first robber forced a bank employee to fill a sack with money from the cash drawer, while the second robber covered him from the lobby. After three bank employees tentatively identified the petitioner as strongly resembling the second robber, the FBI arrested him. A federal grand jury indicted the petitioner with robbing the Laddonia State Bank in violation of 18 U.S.C. § 2113(a) and (d).

At the trial four bank employees identified petitioner as the second robber. Two other witnesses placed petitioner in Laddonia the day and morning before the rob-

bery. Three defense witnesses testified that petitioner was in St. Louis the day of the robbery. The alibi was supported by documentary evidence. The federal jury acquitted petitioner. He was subsequently arrested on a state charge of robbery. Mo. Rev.Stat. §§ 560.120 and 560.135 (1969). At the state trial the same six witnesses identified the petitioner and the three defense witnesses testified that the petitioner was in St. Louis the day of the robbery. The same documentary proof corroborating petitioner's alibi was given. The state jury found the petitioner guilty.

In *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638, 641 (1971), the court barred successive federal-state prosecutions for bank robbery stating:

It appears to us that the only penological justification for permitting a second prosecution and punishment for the same offense even where different sovereigns are involved is out and out punishment, and we certainly hope that at this late date in the history of the development of the penal system of this Commonwealth and the Nation, that incarceration for a criminal act stands on stronger footing than—an eye for an eye.[2]

The court in *Mills* perceived that the underlying rationale of *Bartkus* was federalism—the need to maintain strong state as well as federal systems of justice. This concern arises from a fear that without recognition of the dual sovereignty doctrine either the state or federal government could prevent the effective administration of justice by the other.[3]

In his dissenting opinion in *Bartkus, supra*, 359 U.S. at 155–58, 79 S.Ct. at 698–699, Justice Black soundly criticized this argument:

**2.** It should be noted that Supreme Court of Pennsylvania has recently limited its decision in *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971). In *Commonwealth v. Studebaker*, Pa., 362 A.2d 336 (1976), the court limited the *Mills* approach to successive prosecutions for the "same offense" and refused to expand the doctrine of collateral estoppel beyond the "same parties."

**3.** For law review articles discussing the federalism basis of the dual sovereignty doctrine see

Brant, *Overruling Bartkus and Abbate: A New Standard for Double Jeopardy*, 11 Washburn L.J. 188 (1972); Schaefer, *Unresolved Issues in the Law of Double Jeopardy: Waller and Ashe*, 58 Calif.L.Rev. 391 (1970); Fisher, *Double Jeopardy and Federalism*, 50 Minn.L.Rev. 607 (1966); and Note, *Double Prosecution by State and Federal Governments: Another Exercise in Federalism*, 80 Harv.L.Rev. 1538 (1967).

The Court, without denying the almost universal abhorrence of such double prosecutions, nevertheless justifies the practice here in the name of "federalism." This, it seems to me, is a misuse and desecration of the concept. Our Federal Union was conceived and created "to establish Justice" and to "secure the Blessings of Liberty," not to destroy any of the bulwarks on which both freedom and justice depend. We should, therefore, be suspicious of any supposed "requirements" of "federalism" which result in obliterating ancient safeguards. I have been shown nothing in the history of our Union, in the writings of its Founders, or elsewhere, to indicate that individual rights deemed essential by both State and Nation were to be lost through the combined operations of the two governments. Nor has the Court given any sound reason for thinking that the successful operation of our dual system of government depends in the slightest on the power to try people twice for the same act.

. . . . .

Ultimately the Court's reliance on federalism amounts to no more than the notion that, somehow, one act becomes two because two jurisdictions are involved. Hawkins, in his Pleas of the Crown, long ago disposed of a similar contention made to justify two trials for the same offense by different counties as "a mere Fiction or Construction of Law, which shall hardly take Place against a Maxim made in Favour of Life." It was discarded as a dangerous fiction then, it should be discarded as a dangerous fiction now.

Where the interests of the state and federal governments coincide in the prosecution of a criminal act, as they do here, the federalism rationale is completely unavailing. When this occurs the accommodation of the interest of the individual should be paramount.

I find the examination of the problem by the Supreme Court of Michigan in *People v. Cooper, supra,* to be determinative. In analyzing whether the federal prosecution for robbing a federally insured state bank "sufficiently protects" the state's interest in prosecuting the robbery, the Supreme Court of Michigan listed these factors, "whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interest in securing a conviction, and whether the difference in the statutes are merely jurisdictional or are more substantive." 247 N.W.2d at 871.

The State of Missouri argues that even if the *Mills* and *Cooper* rationale was adopted that it would not be applicable in this case since the state and federal governments did not share the *same* interest when they prosecuted the petitioner. Missouri asserts that the federal government's interest in a prosecution under 18 U.S.C. § 2113 is to insure that "the integrity of the federal banking system is preserved," whereas the state's interest is to protect its citizens "from violence and to insure that their money is not lost." This argument misconceives the rationale of *Mills* and *Cooper.* The focus is not whether the interests are similar, but whether they are so "substantially different" that a prosecution by the federal government would not "sufficiently protect" the state's interest. Moreover the laws of both jurisdictions are not dissimilar as both seek to insure the safety of persons and protect private property. *Cooper, supra,* 247 N.W.2d at 871.

Missouri additionally argues that the disparity of the penalties between the state and federal statutes is such that it cannot be said that a federal prosecution sufficiently protects the state's interest. The maximum penalty for first degree robbery, Mo.Rev.Stat. § 560.135, is life imprisonment, while the maximum penalty under § 2113(d) is 25 years imprisonment. The standard under *Cooper* is whether the maximum penalties are *"greatly* disparate." I do not find the disparity between these penalties to be great when considering the crime—bank robbery.

As an intermediate appellate judge I realize it is not my singular role to express

opinion contrary to established law. However, recognition of this judicial discipline should not prevent one from expressing dismay in the use of stare decisis to perpetuate an injustice.