**STATE of Missouri, Respondent,**

v.

**Otis Lamar RUYLE, Appellant.**

**No. 45638.**

Supreme Court of Missouri,

Division No. 1.

Nov. 10, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 8, 1958.

Charles M. Shaw, Clayton, and Wayne C. Smith, Jr., St. Louis, for appellant.

John M. Dalton, Atty. Gen., William L. Hungate, Sp. Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

By information filed in the Circuit Court of the City of St. Louis, defendant, Otis Lamar Ruyle, and one William Cummings were jointly charged with burglary of and larceny from the offices of Baker's Union (Local No. 4), a corporation, in the City of St. Louis. The information also charged Cummings with six and defendant with four prior convictions of felonies and imprisonment and discharge from imprisonment upon lawful compliance with the sentences imposed. Upon separate trial of defendant, the jury found him guilty of burglary in the second degree and larceny and of "a prior conviction or convictions of a felony". His punishment was accordingly assessed at imprisonment in the State Penitentiary at 10 years for burglary and 5 years for larceny, in conformity with the provisions of Section 556.280 RSMo 1949, V.A.M.S. (All statutory references herein refer to said revision.) Defendant appealed.

Two grounds of error are asserted: (1) The overruling of his motion for a mistrial when a policeman, testifying in behalf of the State, stated that following arrest defendant said to him, "I will tell you about this job but won't tell you about any others"; and (2) error in permitting the jury to find that defendant stole a safe from the premises burglarized and that its value was $380. A brief statement of the evidence adduced by the State will suffice.

The building occupied by Baker's Union is situated on the northeast corner of the intersection of Winnebago Street, an east-west street, and Texas Avenue, a north-south street, in the City of St. Louis. The front door opens on Winnebago and there is a door leading into the building from Texas Avenue. At the close of business on the afternoon of March 28, 1955, the building was closed and its doors were locked. A safe, in which there was in excess of $1,000, was bolted to the floor in the treasurer's office. About midnight of that day, a police officer saw a light in the office and heard "pounding". He with other officers entered the building, where they found the safe had been moved from the treasurer's office into the assembly room, a distance of 10 or 12 feet. It lay on its back, with the combination knocked off, and had been mauled with a sledge hammer. On the floor, by the side of the safe, the officers found a sledge hammer, two crowbars, two punches and a pair of gloves. The door on the Texas Street side of the building had been splintered and the jamb was spread. Defendant and Cummings were in the building and running toward the rear thereof. They were placed under arrest and taken to the police station. There defendant admitted that the sledge hammer and one of the crowbars were his, that a Chrysler automobile parked near the building was his, that he and Cummings had ridden to the building in the Chrysler, that the "tools" found by the safe were brought to the building in the car, and that he helped Cummings remove the safe from the treasurer's office to the assembly room. The conviction, imprisonment and discharge of defendant of the prior crimes, described in the information, were shown by duly authenticated records. Defendant admitted the former convictions, as shown in the State's evidence. He also testified that he came to the building with Cummings in defendant's automobile, but claimed that he entered it in search of a toilet. He denied that he had participated in the burglary and denied that any of the "tools" shown him at the police station were his or that he had ever told the police officers they were his. Further details of the evidence will be stated in connection with the discussion of the contentions set forth in defendant's brief.

During the direct examination of police officer Kramer, he stated in reply to a question asked by counsel for the State that he had "questioned" defendant after taking him to the police station. Thereupon, counsel

for the State asked, "What statement, if any, did he make at the Third District?" To which, the witness replied that defendant had stated, "I will tell you about this job but won't tell you about any others." No objection was then made by counsel for defendant. Counsel for the State continued to inquire as to what defendant said "about this job, here", in answer to which questions the witness stated in detail, throughout more than a page of the transcript, the statements made by defendant as to his participation in the burglary and larceny for which he was on trial. When the witness had completed his answers to these questions, counsel for defendant came to the bench and, out of the hearing of the jury, moved for a mistrial upon the ground that the witness knew better than to make the portion of the statement, "but won't tell you about any others"; that the statement was made for the purpose of prejudicing the jury, was highly inflammatory and that the prejudicial effect could not be removed by any instruction given the jury to disregard it; and that such an instruction would only magnify the matter in the eyes of the jury. Defendant's counsel further stated, in the court's chambers, "I want the record to show that on at least two occasions when the witness (Kramer) was relating the contents of the statement made by Ruyle (defendant) I got up from the counsel table and started to approach the Bench there when the witness paused, and when he continued on speaking I waited until such time as the witness was through, stating as my reason therefor that I did not want to make this objection in the hearing of the jury." The court thereupon instructed the jury: "Gentlemen of the Jury, I am striking from the record the reference that the witness made as to 'other jobs' and instruct you to disregard that portion of his testimony."

Unquestionably, the objection and motion for a mistrial came too late. Defendant's counsel had ample time to object and move for a mistrial immediately after the answer was given, yet he permitted the questioning of the witness to proceed until the witness had fully answered all of the questions propounded to him with respect to admissions made by defendant at the police station. The explanation given by counsel for his failure to make prompt and timely objection cannot relieve him of failure to act more promptly. See State v. Cowan, Mo.Sup., 310 S.W.2d 939, 940–941 [2–4]. Furthermore, despite the failure of defendant's counsel to make timely objection, the court upon being apprised that defendant did object moved promptly to correct any prejudicial effect the answer given by the witness could have had upon the jury. The trial court is vested with a broad discretion in determining whether a mistrial should be declared under the circumstances above shown and, absent showing of abuse of that discretion, the appellate courts will not convict it of error. State v. Cowan, supra, loc. cit. 941; State v. Green, Mo.Sup., 305 S.W.2d 863, 874. No abuse of that discretion is shown. The assignment is overruled.

As stated, defendant next contends that there was no evidence to support a finding by the jury that he stole the safe in question or that its value was $380. The information alleged and Instruction No. 4 submitted in the conjunctive not only the theft of the safe but also its contents, including money in excess of $1,000. The evidence in behalf of the State showed that its contents consisted of approximately $1,000 in money. Defendant concedes that the evidence warranted a finding by the jury that he intended to take those contents and that he committed an overt act in effectuating his intent, and the State's evidence shows that he did take into his possession both the safe and its contents. Thus, an issue of larceny of the contents of the safe, committed in connection with the burglary, was clearly and concededly made. The finding of the jury was that defendant and Cummings stole both the safe and its contents. It being conceded that the evidence supports a finding of intent to steal the contents of the safe, the question of whether an intent to steal the safe was shown by the evidence could not

render the verdict prejudicially erroneous. However, we think it also clear that the evidence supports a finding that defendant and Cummings stole the safe. They may have been primarily interested in its contents, yet the jury legitimately could infer and find as a fact that they intended to take and appropriate to their own use and permanently deprive the owner of all of the property they had "asported", i. e., feloniously removed from the place where it· was kept by the owner. See State v. Gazell, 30 Mo. 92; State v. Higgins, 88 Mo. 354; State v. Johnson, Mo.Sup., 293 S.W.2d 907, 909–910. The assignment is overruled.

■ Neither was the value of the safe a material factor in the case. Any larceny (now defined as "stealing", see sections 560.156 and 560.110, 1957 Supp. RSMo 1949, V.A.M.S.) committed in connection with a burglary is a felony irrespective of the value of the property taken, State v. Enochs, Mo. Sup., 98 S.W.2d 689, 690, and the maximum punishment therefor is five years imprisonment in the State Penitentiary, section 560.-110, supra. The safe was introduced in evidence and viewed by the jury. An officer of the Baker's Union testified (over objection of defendant, it is true) that he had knowledge of its cost and value and that it cost, in February, 1954, $385. While the cost might not amount to proof of the true value of the safe, yet such evidence, together with a view of it by the jury, would clearly warrant a finding that it was of some value. Consequently, when defendant was found guilty of burglary and larceny of any of the property described in the information and the jury further found that he had been priorly convicted of one or more felonies and imprisoned and lawfully discharged upon compliance with his sentence or sentences therefor, the so-called habitual criminal act, section 556.280, made it mandatory that the jury assess defendant's punishment at the longest term prescribed for conviction of each of the offenses for which he was being tried. The assignment is overruled.

■ The information sufficiently charges defendant with burglary in the second degree and prior convictions under the habitual criminal act. Sections 560.070, 560.110, 556.280; State v. O'Brien, Mo.Sup., 245 S.W.2d 857, 859; State v. Jonas, Mo.Sup., 260 S.W.2d 3, 6. Although no record of arraignment or entry of plea of defendant is shown, the record does show that he was tried as if he had been arraigned and entered a plea of not guilty. In such cases, Supreme Court Rule 25.04, 42 V.A.M.S., expressly provides that failure of arraignment and entry of plea does not constitute reversible error. The verdict is responsive to the issues and the punishment assessed within the aforesaid statutes. The record also shows that defendant and his counsel were present throughout the trial and all after-trial proceedings, that prior to sentence he was accorded allocution as provided by law, and that the judgment is in due form.

The judgment is affirmed.

All concur.