STATE of Missouri, Respondent,

v.

Joseph EYE, Appellant.

No. 52254.

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Carl R. Gaertner, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Robert A. McIlrath, Flat River, for appellant in Circuit Court. No brief filed in Supreme Court. Case taken as submitted.

WELBORN, Commissioner.

Joseph Eye appeals from a judgment and sentence, under the Habitual Criminal Act, of five years' imprisonment for stealing a cow.

Sixteen-year-old Dennis Fitzwater, as a witness for the state, testified that he, the appellant and appellant's brother, Marvin Eye, were driving around the open range country in Washington County on September 22, 1965, looking for "some pork to butcher." They saw some Angus cattle. Joe shot at one in the road with a pistol, hitting the animal, but it only "staggered and ran off." Subsequently, at around noon, they came across an Angus cow, Marvin shot the cow. Joe, who had been asleep in the back seat, went with Marvin to where the animal had fallen. When it started bawling, Joe and Marvin fired some ten shots into its head.

The cow was left where it had been shot, about thirty feet from the highway. At around seven that evening, Dennis accompanied appellant, Marvin and Paul Essmyer to the place where the dead cow was lying. According to Essmyer, Marvin and Joe were going to take the meat, but the animal was bloated and they left it there. Ralph Crump identified the dead animal as one owned by him and his brothers and which they allowed to run at large on the open range in Washington County.

On such evidence, the jury found the appellant guilty of stealing, rejecting his defense of alibi. Upon a finding of the applicability of the second offender act, the court fixed the punishment at five years' imprisonment. Appellant's retained trial counsel filed a motion for new trial which

was overruled. An appeal was filed, but no brief has been filed on behalf of appellant in this court.

The first question which confronts us is the sufficiency of the evidence to show a violation of § 560.156, RSMo 1959, V.A.M.S. our "stealing" statute. That statute defines "steal" as "to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transfering, concealing or retaining possession of his property." Although the information was not required to specify that the exercise of dominion over the cow was by any of the methods enumerated by the statute (see State v. Miles, Mo.Sup., 412 S.W. 2d 473), we note that it charges that the exercise of dominion was by killing the animal. There is no evidence of further exercise of dominion by defendant over the cow.

If the conviction is to stand, there must be a showing that the appellant's act of killing the cow was an exercise of dominion in one of the specified manners. The state suggests that killing constituted "using" the animal and also that there was a "taking" of the life of the animal. The submission to the jury was on neither of such theories. The verdict-directing instruction called for a finding of guilt if the jury found that the appellant did steal the cow by "wilfully, unlawfully, feloniously, and intentionally shooting and killing said Angus cow, with the specific intent to steal, take and convert the said cow to the use of the defendant, and to permanently deprive the owners of the use thereof, * * *."

That instruction would have properly submitted a charge under former § 560.205, RSMo 1949, V.A.M.S., repealed upon the enactment of our present stealing statute. Laws of Mo., 1955, p. 507, § A. By that repealed section, the intentional killing of an animal, the subject of larceny, with intent to steal or to convert to the use of the killer the carcass or skin of the animal, was made larceny, punishable "in the same man-

ner as if he had feloniously stolen such animal." That express statutory definition of the act in question was necessary to permit a prosecution for larceny in cases, such as that here involved, when there was no common law larceny by reason of the lack of the essential element of asportation, or carrying away. "[M]erely shooting down an animal with felonious intent is not an asportation sufficient to constitute larceny of the animal at common law, although statutes intended to remedy this defect and afford protection to the owners of domestic animals have been enacted in some jurisdictions." 32 Am.Jur., Larceny, § 21, p. 906.

■ The state asserts that the simultaneous enactment of § 560.156 and repeal of § 560.205, along with fifty-eight other statutes, shows that the legislative intention was "to consolidate these separate crimes under the less confusing heading of 'stealing'" and that "§ 560.156 must be construed as including within its scope the offenses of the 59 repealed sections of the statutes, including § 560.205, * * *." However, legislative intent is no substitute for legislative enactment, particularly when the criminal law is concerned. The enactment must be broad enough to describe the offenses covered by the repealed provisions if the ascribed intent is to be fulfilled.

■■ Looking at the methods enumerated by § 560.156, by which a person may exercise dominion over the property of another, we find no language indicating that the legislature intended to eliminate the requirement of asportation as an element of the offense which it defined. As pointed out in State v. Miles, Mo.Sup., 412 S.W.2d 473, 475 [1–8]: "The word 'steal' when applied to property has a well-defined meaning, '* * a uniform significance, and in common as well as legal parlance means the felonious taking and carrying away of the personal goods of another.'" By § 560.156, the legislature has described numerous means by which such taking and carrying away may be accomplished, but it did not, in our opinion, use any terminology which indicated

that the legislature intended the elimination of the basic elements of the offense. As pointed out in State v. Zammar, Mo.Sup., 305 S.W.2d 441, 444–445 [5], the object of the enactment of our stealing statute was "to eliminate technical distinctions between the offenses of larceny, embezzlement and obtaining money under false pretenses." See State v. Woolsey, Mo.Sup., 324 S.W.2d 753, 754 [1–3].

■ The state, in arguing that the killing constituted "using" within the statute, says: "Even without the testimony concerning appellant's intention to take the meat from the carcass of the cow, and even if it be assumed that the shooting of the cow was merely an act of diversion or perverted entertainment on the part of the appellant, he 'used' the property of another without his consent, * * *." This argument overlooks the fact that § 563.670, RSMo 1959, V.A.M.S., makes the willful and malicious killing of the dumb animal of another a misdemeanor. That section was not affected by the enactment of § 560.156. Under the state's argument, the basic difference between the offense here attempted to be charged and that described by § 563.-670 must be the intent with which the act is done. However, § 560.156 affords no basis for such distinction and we must conclude that it does not apply to a mere shooting of an animal with whatever intent. If the legislature wishes to prohibit and punish as stealing activity such as that here shown, some more explicit basis therefor must be provided.

The judgment is reversed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.