STATE of Missouri, Respondent,

v.

Walter D. KNABE, Appellant.

No. KCD 27761.

Missouri Court of Appeals,
Kansas City District.

June 1, 1976.

Rehearing Denied July 6, 1976.

L. R. Magee, Hines & Magee, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Charles L. Howard, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOF-FORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

The appellant (hereafter defendant) was charged with the felony of stealing property over the value of Fifty Dollars, Section 560.156 RSMo 1969. After a jury trial, he was found guilty, and in accordance with such verdict, was thereafter sentenced to six (6) months in the Jackson County Jail and a fine of Five Hundred ($500.00) Dollars. After an unavailing motion for a new trial, this appeal followed in due course.

The defendant attempts to raise two points on this appeal. He states, *first*, that the court erred

"in overruling defendant's motion for directed verdict of acquittal for the reason that the state failed to prove beyond a reasonable doubt all of the elements of the crime of which the defendant was accused."

*Secondly*, he states that the court erred

"in giving Instruction No. 6 to the jury for there was no evidence to support such instruction."

This instruction is the standard accomplice or accessory instruction as formulated in MAI–CR 2.10.

Even a casual reading of these "Points Relied On" leads to the conclusion that they fall far short of the requirements of Rule 84.04(d), made applicable to criminal appeals by Rule 28.18. However, consistent with this court's past indulgent willingness to seek out and glean from the arguments in the briefs and the whole record what the

real points on appeal are, without benefit of the obligatory assistance of counsel, these points will be ruled. It should be reiterated again, however, that the bar cannot and should not expect this indulgence to long continue. Work load, manpower and time must dictate its discontinuance and the imminent application of an inflexible requirement that the rules on appeal be given strict application.

■ The defendant and two other persons were charged with stealing certain property of the value of $1,484.00 on June 5, 1974, in Jackson County, Missouri, from an apartment construction site at 122nd Street and Holmes, which property was owned by Don Alpert Construction Company. The defendant's claims of error under his first point (and commingled in his second point) may be fairly stated that the state failed to make a case against him because there was no proof that the Alpert property was ever "stolen" in that it was never removed from its possession or control, and that the state likewise failed to prove the defendant's physical presence at the scene of the theft. Resolution of these claims requires a review of the evidence in the light most favorable to the state and affording it all favorable inferences to be drawn therefrom, and evidence and inferences contrary thereto must be disregarded. State v. Stapleton, 518 S.W.2d 292, 296[1] (Mo. banc 1975).

At about 6:00 p. m. on June 5, 1974, Sergeant Closterman of the Crimes Against Property Unit of the Kansas City, Missouri police department received a call from a Federal Alcohol, Tobacco, Firearms Agent, Virgil Walker, that he had received a tip that a theft was going to occur later that evening and asked Closterman to assign some police officers to conduct surveillance at 71 Highway and Bannister Road. Sergeant Closterman went to that location and met Walker, who told him Thomas Butler, Walter Knabe, and Walter Dewayne Knabe (the defendant) were planning "a score" and were going to use a rental van truck. Thomas Butler lived in the vicinity of this location and around 7:45 or 8:00 p. m., a large van-type truck pulled into the Butler driveway. A little later, the van pulled out of the driveway and Closterman testified that Walter Knabe, Thomas Butler and the defendant were in the truck, and Closterman thought the defendant was driving. Thereupon, Closterman ordered a police helicopter, piloted by Fred W. Amos, to conduct surveillance of the truck.

From the air, Officer Amos observed the van truck leave the Butler residence and followed it on various moves to the construction site here involved, where it stopped for a time, then, after other driving in the area, returned to the construction site. At no time did Officer Amos see anyone get out of the truck. In the meantime, two officers in a patrol car took up surveillance from the ground; spotted the van truck, and followed it to the construction site. Neither officer saw anyone get out of the truck.

One Clarence Klapmeyer, a resident of the neighborhood, who had been asked by the construction company "to keep an eye on things" at the location, had observed a man in T-shirt and blue jeans walking around the construction site. Later, he saw a U–Haul van when it came to the site the first time, and when it returned, he called the police. Response was made to this call by Patrolman Gary M. Smith, who had no knowledge of the occurrences above related. He picked up Klapmeyer and the two of them drove to the construction site. As they approached a Tip-Top Plumbing & Heating Company trailer located there, Patrolman Smith saw three men jump out from between the van truck and the Tip-Top trailer and run, and he pursued them on foot. The trio split and Smith caught two of them about 200 yards from the site. These two were Thomas Butler and Walter O. Knabe, the defendant's father. Smith was unable to catch the third man.

In the meantime, other officers had arrived at the scene and an investigation revealed that the Tip-Top trailer had been entered and the items of property (owned by Alpert and in the Tip-Top trailer) which form the corpus delecti of the crime of

which the defendant stands convicted, had been transferred to the U–Haul van truck which had been under surveillance. The officers also found a pair of bolt cutters under the front seat of the van truck and a padlock on the ground near the van which appeared to have been cut with a bolt cutter. In the glove compartment of the van officers found a rental agreement signed by the defendant for the U–Haul van and subsequent investigation also revealed that defendant had rented a pair of bolt cutters at the same time he rented the van.

While these events occurred, Detective Adamson of the Kansas City Police Department had gone to the home of Tommy Butler at 9601 Spruce (with whom he was acquainted) to question him about "another incident at another location". He found no one at home, but observed a 1964 Chevrolet in front of the house. A check of the license revealed the car was registered in the name of Walter Dewayne Knabe, the defendant. As he was leaving the Butler house, he received a radio call to proceed to the construction site here involved. Upon arrival, he found Tommy Butler and Walter O. Knabe in custody of other officers.

Later on the evening of June 5, 1974, the defendant was arrested by Officer Gary Russell responding to a radio pickup order, about two miles from the construction site. While no roads directly connected the site with the place of his arrest, it was shown that a railroad right-of-way runs from the construction site to about 100 yards from the place of arrest.

The defendant did not testify, but his father testified in his behalf, and on direct examination stated that his son had rented the truck at the request of Tommy Butler; that the defendant left Butler's home with him and Butler in the van; that a discussion was had about stealing from the construction site; that the defendant decided "he didn't want to get involved"; that therefore, defendant was let out of the van at Minor Park; and, that he and Butler then proceeded to the construction site where his arrest occurred. It should be noted that on cross-examination, Walter O.

Knabe stated that he and Butler did not discuss stealing from the construction site until after his son, the defendant, left the van at Minor Park. Also, at the time the father had entered a guilty plea to the charges against him arising from this occurrence, he had told the court that he had been drinking on the evening of June 5, 1974. He further expounded upon this at the trial, that he had been drinking all day and was drunk, but "knew what was happening".

■ The state sustained its burden of proof that the property here involved was stolen. The statute under which defendant was charged defines the term "steal", Section 560.156, 1(2) RSMo 1969, as:

"to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property."

The basic elements of this crime have been defined to mean the felonious taking and carrying away of the property of another. *State v. Eye*, 415 S.W.2d 729, 730[2] (Mo. 1967). The element of "taking" is complete at the moment the offender wrongfully assumes complete dominion over the property of another inconsistent with the owner's rights. The duration of the dominion is immaterial. 52A C.J.S. Larceny § 6, p. 424 et seq. The second element of "carrying away" has become known in the lexicon of the law as "asportation" and occurs once the property "taken" has been moved, however slightly. In order for the taking or asportation of the property to be established the state need not prove that the same was removed from the premises of the owner. In other words, the theft need not be *successful* to establish the elements of the crime. 52A C.J.S. Larceny § 6, p. 426 et seq. Thus, in *State v. Smith*, 342 S.W.2d 940, 942[4] (Mo.1961), the property had been moved from a storage area and loaded onto a cart near an outside entrance; in *State v. Burnley*, 480 S.W.2d 881, 883[4] (Mo.1972), metal ingots were found within the owner's fence and on its property but outside the

building where they were kept; in *State v. Perryman*, 487 S.W.2d 515, 519[9, 10] (Mo. 1972), the defendant was caught upon the owner's premises with the money from the victim's cash box on his person; and in *State v. Ruyle*, 318 S.W.2d 218, 220–221[3, 4] (Mo.1958), a safe was moved 10 or 12 feet from its usual position. In each of these cases, the court held that the state had met its burden of proof to establish a taking and carrying away and thus the charge of stealing.

■ In the case at bar, the state's evidence established without dispute that the property alleged to have been stolen had been moved from the construction site trailer to the U–Haul van truck, even though it · had not been successfully taken from the premises before the senior Knabe and Butler were apprehended. The elements required by Section 560.156, 1(2) RSMo 1969, supra, and the above decisions, to justify submission of a charge of stealing were established by the state's evidence.

The other facet of defendant's position, as gleaned from the argument portion of his brief, is somewhat obscure and difficult to follow. A fair conclusion of this argument is that the state failed to prove his physical presence at the scene of the crime and therefore the court erred in giving Instruction No. 6 (MAI–CR 2.10), the instruction as to the responsibility of a person as "aider or encourager" in the commission of a crime.

■ It is true that the state's evidence as to the defendant's actual physical presence at the scene of the stealing was circumstantial, and therefore must be viewed by an appellate court with more stringent scrutiny in determining the sufficiency of the state's evidence. *State v. Stapleton*, supra, 518 S.W.2d at l.c. 296[1]. Such circumstantial evidence in this case was strong and convincing.

■ Detective Closterman having been advised by the federal agent that the defendant, his father and Butler were planning a theft, had the van under surveillance at the time it left the Butler premises. He testified that the three men left the premises in the van truck. Officer Amos took up the surveillance from the air and followed the van during its maneuvers to the site of the crime and testified that no one left the truck. When Officer Smith came to the construction site and to the place where the van truck was located, he saw three men flee the scene and apprehended the elder Knabe and Butler. The defendant was thereafter apprehended on foot at a point directly connected to the scene of the crime by a railroad right-of-way, a natural and available escape route. Additionally, the state proved that during this period of time, the defendant's private automobile was parked at Butler's unoccupied house. No evidence appears in the record that any person other than the two Knabes and Butler had any connection with the matter.

The elder Knabe did testify that his son was let out of the truck at Minor Park before the theft because the defendant "didn't want to get involved" but such testimony was in conflict with that of Officer Amos, and the elder Knabe admitted he was intoxicated that evening. His credibility was, of course, for the jury. The foregoing was sufficient circumstantial evidence from which the jury could conclude that the defendant was physically present at the time of the theft, an issue of fact directly presented to them by Instruction No. 5 (MAI–CR 3.20), the "alibi" instruction requested by the defendant.

■ The defendant further complains, however, that there was no evidence to support the giving of Instruction No. 6, the "aider and encourager" instruction, MAI–CR 2.10. He raises no question as to the form of such instruction but only as to its applicability to the facts in this case. In this area, there was strong and convincing direct and circumstantial evidence to justify this submission. In addition to the foregoing facts, it is beyond dispute that the defendant, using funds supplied to him by Butler, leased the U–Haul van, signed the lease agreement, rented the pair of bolt cutters found under the seat thereof, and accompanied by his father delivered this equipment to the Butler residence. He was

driven by Butler to the place where the leasing arrangements were made; he personally made these arrangements because Butler owed U–Haul some money and therefore could not do so himself; and, the defendant was physically in the truck (and possibly driving it) when the three men left the Butler home.

The following appears in the "Notes on Use", accompanying MAI–CR 2.10:

"1. This instruction should be used where there is evidence (a) that defendant was an active participant in the crime or its attempt, *even if he was not the principal actor,* or (b) that defendant aided or encouraged other participants *either before or during the crime* or its attempt and *was present or not * * "* (Emphasis supplied)

■ Aiding or encouraging is sufficiently shown where the evidence discloses any affirmative participation by the defendant. *State v. Ramsey,* 368 S.W.2d 413, 417[5] (Mo.1963); *State v. Stockdale,* 415 S.W.2d 769, 772[7] (Mo.1967); and *State v. Chase,* 444 S.W.2d 398, 403[8] (Mo. banc 1969).

Aside from the facts clearly permitting the inference that defendant was at the scene of the crime as heretofore discussed, his undisputed acts in providing the means whereby the crime was committed and the other circumstances of his connection therewith from the time the federal agent advised Sergeant Closterman that he had information that defendant, his father and Butler were planning the theft to the time of his arrest justified the giving of MAI–CR 2.10 and the permissible inference that he knowingly aided and encouraged it and actively participated in its perpetration at some, if not all, stages. It was not error to give Instruction No. 6, and the defendant was not prejudiced thereby.

The judgment is affirmed.

All concur.