STATE of Missouri,
Plaintiff-Respondent,

v.

Lowell WOODS, Defendant-Appellant.

No. 10743.

Missouri Court of Appeals,
Southern District,
Division One.

July 18, 1979.

John D. Ashcroft, Atty. Gen., Gregory W. Schroeder, Asst. Atty. Gen., James R. Cumbee, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

John B. Newberry, Springfield, for defendant-appellant.

TITUS, Presiding Judge.

Defendant and one Jim Richard Carpenter were jointly charged with stealing five steers "the property of Warren Gamel, of a value of over $50.00" as denounced by §§ 560.156 and 560.161.[1] Defendant was also charged as a second offender under § 556.280. Carpenter was granted a severance and defendant was jury-convicted and court-sentenced to the custody of the Division of Corrections for a term of six years. Defendant appealed.

The lone point relied on in defendant's new trial motion and on appeal is that the trial court erred, to defendant's prejudice, by including the second paragraph of MAI–CR 2.10 in Instruction No. 5,[2] contrary to Notes on Use numbered 3 under MAI–CR 2.10[3] because there was no evidence that defendant was present at or near the scene of the crime at the time it was committed.

Warren Gamel owned 67 head of cattle which he kept on a farm situate one-half mile east of Mrs. McCroskey's rural home. On the morning of January 5, 1977, Gamel fed and counted his herd, finding them all present. The next morning Gamel found 9 head missing, included in which were the 5 steers defendant and Carpenter were accused of stealing. The cattle were branded with a "W" and had holes punched in their left ears for identification.

Somewhere near 10 or 11 a. m. January 5, Mrs. McCroskey observed an aqua or greenish-blue old model Chevrolet pickup truck with "some unpainted, unfinished lumber racks on it" employing her driveway to reverse direction and travel eastward in the direction of the Gamel farm. The bed of the truck then appeared to be empty. About one or one and a half hours later, Mrs. McCroskey saw the same pickup traveling west past her house. She said the

---

1. References to statutes are to RSMo 1969. References to MAI–CR 2.10 are to Missouri Approved Instructions—Criminal 10–8–73. References to rules are to Missouri Supreme Court Rules of Criminal Procedure, V.A.M.R.

2. "Instruction No. 5

All persons are guilty who knowingly act together with the common purpose of committing an offense, or who knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence." (MAI–CR 2.10).

3. MAI–CR 2.10—"Notes on Use . . . 3. The second paragraph should be omitted if there was no evidence that defendant was present at or near the scene of the crime."

truck was then loaded but she "couldn't say what with." Mrs. McCroskey could not see how many people were in the truck.

Gregory Helton, age 16 years who resides with his mother and Larry Dickens on a farm, did not go to school on January 5 because he missed the school bus. About 1:30 p. m. that day Gregory saw Carpenter's Chevrolet "turquoise" colored pickup truck drive onto his home place. Carpenter was driving the truck accompanied by defendant. The truck was equipped with stock racks and loaded with five cattle. Defendant and Carpenter unloaded the cattle into a barn on the premises, removed the racks from the truck and placed them adjacent to the barn.[4]

Larry Dickens (who resided with Gregory Helton and Gregory's mother) encountered defendant and Carpenter in a bar about 2 or 3 p. m. January 5. Dickens indicated to defendant and Carpenter, when asked, that he would be interested in purchasing some livestock. No description of the stock was given or inquired of and no price was mentioned. When Dickens returned home near darkness he discovered five head of "strange" cattle in the barn and an old stock rack in front thereof. A day or two later Dickens encountered defendant in a tavern and paid him in cash, "Forty-five dollars a head," for the five cattle. Shortly thereafter Dickens heard a radio report concerning stolen cattle branded with a "W". Inspection of two cattle revealed they were so branded. Dickens then forged a $340 receipt signed by fictitious "Bill Wilson" showing he had paid that sum for the cattle and decided he needed to get rid of the animals immediately. On January 18 Dickens sold the five cattle to Ronnie Russell who paid for them with a $450 check. The cattle were later recovered from Russell and returned to owner Gamel. The operator of the Mill Tavern declared himself the owner of the stock racks in question and testified he had loaned them to Jim Carpenter.

Based on the testimony of Warren Gamel and Gregory Helton, we believe it was reasonable for the jury, as fact-finders, to conclude that five of Gamel's cattle were stolen from his property on January 5 between the time all were counted and found present and before they were unloaded from Carpenter's truck with defendant's aid near 1:30 p. m. and placed in Dickens' barn as observed by Helton. However, we are of the opinion that to place the defendant at or near the scene of the stealing *at the time it was committed,* requires the use of inferences and the stacking thereof. It is axiomatic that an inference may not arise which is dependent for establishment of one fact upon an inference to be drawn from some other fact shown only by inference. *State v. Holman,* 556 S.W.2d 499, 509[26] (Mo. App.1977).

If, from the vague description of the vehicle seen by Mrs. McCroskey, it was permissible for the jury to infer the pickup she observed was the one owned by Carpenter and later employed in delivering stolen cattle to the Dickens' farm, the jury would have to further infer from this inference that between the two times the pickup was seen by Mrs. McCroskey, it had been driven to the Gamel place and loaded with stolen cattle. Also to be remembered is that when Mrs. McCroskey saw the westbound truck at 11 a. m. to 12:30 p. m., she could not see its load or the number nor identity of its human occupant or occupants and to say that it was then carrying cattle and the defendant requires a further inference predicated on the inferences already mentioned. But even if the inference stacking, *supra,* be accepted as facts, defendant was never directly nor indirectly placed as having been at or near the scene of the stealing *at the time of its commission.* Consequently, to find defendant guilty of stealing (as opposed to other crimes) would require inverse inferences to be drawn from the facts that cattle were stolen and defendant, thereafter, was in apparent joint possession

---

4. The evidence does not show the distance separating the Gamel farm from whence the cattle were stolen and Gregory Helton's house. How-
ever, the state does not contend that Gregory's home was at or near the scene of the charged crime.

thereof some one to two and a half hours after the inferred time of theft.

█ In fine, even if it be conceded that the evidence was sufficient to justify the inference that Carpenter's truck was used to haul away the stolen cattle, in order to directly connect defendant with the crime of stealing it would also be necessary to infer that from his later occupancy of the vehicle and subsequent conduct that he was present at or near the scene of the stealing at the time it was committed and this, we hold, is not a permissible inference. Cf. *State v. Schrum,* 347 Mo. 1060, 1065, 152 S.W.2d 17, 19–20[3] (1941); *State v. Morse,* 515 S.W.2d 608, 610[3] (Mo.App.1974). Cases holding that the giving of the second paragraph of MAI–CR 2.10 was not erroneous, are not persuasive here because in each of the following there was strong and convincing direct or circumstantial evidence, or both, that defendant was present at or near the scene of the crime at the time it was committed. *State v. Keever,* 569 S.W.2d 400, 403[7] (Mo.App.1978); *State v. Knabe,* 538 S.W.2d 589, 593–594[6–8] (Mo.App. 1976); *State v. Williams,* 524 S.W.2d 137, 139 (Mo.App.1975).

█ In apparent anticipation of the foregoing, the state says that even if we, as already done, were to determine it was error to give the second paragraph of MAI–CR 2.10 in violation of Notes on Use 3 (footnotes 2 and 3, supra), the error was not prejudicial. Our opinion is otherwise.

Rule 20.02(e) states: "Giving or failing to give an instruction . . . in violation of this Rule or any applicable Notes on Use shall constitute error, its prejudicial effect to be judicially determined." To determine the prejudicial effect of giving the second paragraph of MAI–CR 2.10, we look to the principal verdict director for finding the defendant guilty.[5]

A reading of Instruction No. 6 (quoted in footnote 5, supra) clearly indicates that before defendant could be determined guilty, "*defendant* and another *took* five (5) head of cattle . . . that the property *was taken by the defendant* . . . that *the property was taken by the defendant . . . ,*" etc. (Emphasis supplied). In other words, the jury was told that before it could conclude defendant was guilty of stealing, it had to find defendant personally or with another took the cattle. However, there was absolutely no competent evidence the cattle "was taken by the defendant" at or near the scene of the stealing at the time the stealing was committed. The only suggestion as to this unproved circumstance came from the second paragraph of Instruction No. 5 (MAI–CR 2.10) which unauthorizedly placed defendant at or near the scene of the charged crime at the time it was committed. This was prejudicial error.

Judgment reversed and cause remanded for a new trial.

FLANIGAN, C. J., and GREENE, J., concur.

PREWITT, J., not participating because not a member of the court when cause was submitted.

[5]                    "Instruction No. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 5, 1977, in the County of Greene, State of Missouri, the defendant and another took five (5) head of cattle owned by Warren Gamel, and

Second, that the property taken was of the combined value of at least fifty dollars, and

Third, that the property was taken by the defendant and another with the intent to permanently deprive Warren Gamel of his use of such property and to convert it to the use of the defendant and another, and

Fourth, that the property was taken by the defendant and another without the consent of the owner, and

Fifth, that the defendant acted either alone or knowingly and with common purpose together with another in the conduct referred to in the above paragraphs, then you will find the defendant guilty of stealing property of the value of at least fifty dollars.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense." (MAI–CR 7.70 & 2.12).