**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Rick Girard BEATTY,
Defendant-Appellant.**

No. 41222.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 19, 1981.

Hannegan, Knight, Kennedy, Schoeneberg & Weber, Inc. by Wayne T. Schoeneberg, St. Charles, for defendant-appellant.

John Ashcroft, Atty. Gen. by Lisa M. Camel, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

Defendant appeals from a conviction by a jury of robbery in the first degree, kidnapping and sodomy. The jury assessed punishment and the trial court imposed sentences of five, two and twenty years respectively. The sentences for kidnapping and sodomy were to be served concurrently. The sentence for robbery was to be served consecutively with the other two sentences. We affirm.

From the evidence, the jury could have found that one morning at approximately 4:00 a. m., Phyllis King was working alone as a clerk at a Seven-Eleven store located in O'Fallon, Missouri. At that time, defendant entered the store, picked up a bottle of "Choc-Ola" soda and a bottle of Wesson oil and brought them to the checkout counter. Defendant was described by King as wearing a dark blue denim shirt jacket over a white T-shirt and blue jean pants. While King rang up the items on the cash register, she noticed defendant appeared to be holding a gun under his shirt. Defendant said, "Don't step on anything, don't make any sudden moves or I'll blow your ... head off." He ordered King to open the cash register and hand him the bills in the register. Defendant then ordered King to lay the bills on the counter, which she did. King's car was parked on the store's parking lot. Defendant told King to get the keys for her car, to pick up the money and to come with him. King complied because "(h)e told me that he would shoot me." As defendant and King were leaving the store, an Otis Timmerman approached. Defendant ordered King to "get rid of" Timmerman or he would shoot both King and Timmerman. King complied without disclosing her predicament to Timmerman.

Defendant directed King to get into her car and drive. King got into the car and placed the money on the front seat of the car. Defendant entered the passenger side and placed the bottles of soda and oil on the floor of the car. Defendant's right hand remained under his shirt while King drove the car. After stopping once to discard King's work smock, defendant directed King to another location, where defendant, still holding an object under his shirt with his right hand, forced King to undress and to commit an act of sodomy. Defendant later threw his underwear in the weeds.

Subsequent to the sodomy, King observed a pair of pliers fall out of defendant's shirt. Referring to the pliers, defendant remarked, "Do you want to see what I held you up with?" King became angry. At that time, King was outside the car. She

got into the car and attempted to drive off. However, because of mud at that location, she was unable to leave the scene and needed defendant's assistance to extricate the car. Defendant asked King to drive him to St. Charles but King refused. He then asked her to drive him to Highway 79, and she did so because she needed directions to get back to the highway. Along the way to Highway 79, defendant discarded the bottle of soda. Once on the highway, defendant discarded the bottle of Wesson oil. When King stopped to let defendant out of the car, he offered her the money taken from the Seven-Eleven but she refused to accept it. Defendant then took the money and left. King returned to the Seven-Eleven store, where she met a Major Anderson of the O'Fallon Police Department.

Major Anderson drove King to a service station located near Highway 79 where she had last seen defendant. Defendant was at the station. Anderson arrested the defendant after King identified him as the robber and her assailant. At the time of arrest, defendant was wearing a white T-shirt and blue jean pants.

Anderson found a pair of pliers in a trash can at the service station. Anderson and King retraced King's itinerary and recovered a dark blue shirt jacket, a "Choc-Ola" bottle, a broken piece of bottle with a Wesson oil label and a pair of men's underwear.

At trial, King positively identified defendant as the man who had robbed, kidnapped and forced her to commit sodomy. Timmerman identified defendant as the man leaving the Seven-Eleven store with King. In addition, the state introduced into evidence the pair of pliers, the dark blue shirt jacket, the "Choc-Ola" soda bottle, the broken piece of bottle with a Wesson oil label and the pair of men's underwear.

■ Defendant first contends the evidence was insufficient to sustain his conviction of robbery in the first degree. Defendant was charged under former § 560.120

RSMo 1969.[1] That statute defined robbery in the first degree as the felonious taking of property of another, from his person or presence and against his will, by fear or violence. Because robbery requires the taking to be accomplished by fear or violence, robbery is proven by showing the fear or violence preceded or was contemporaneous with the taking. *See State v. Vandament,* 299 S.W.2d 532, 535 (Mo.1957). Defendant claims the state failed to make this proof. Defendant argues he took possession of the property in question only after King was no longer in fear, and, thus, the actual taking of the property was not occasioned by any fear. We disagree.

By statute, the felonious taking of property is an explicitly designated element of robbery. § 560.120. However, the statute is silent about the carrying away of the property. Apparently, the carrying away is an implied element. *See State v. Payne,* 452 S.W.2d 805, 807 (Mo.1970). Thus, two of the basic elements of robbery are the felonious taking and carrying away of property. These two elements are also basic elements of robbery's companion crimes: larceny and larceny's equivalent, statutory stealing. In larceny and stealing, "[t]he element of 'taking' is complete at the moment the offender wrongfully assumes complete dominion over the property of another inconsistent with the owner's right. The duration of the dominion is immaterial.... The second element 'carrying away' has become known in the lexicon of the law as 'asportation' and occurs once the property 'taken' has been moved, however slightly." *State v. Knabe,* 538 S.W.2d 589, 592 (Mo. App.1976). The definitions of these elements do not vary for robbery,[2] and, under these definitions, the evidence clearly demonstrates defendant took the bottles of soda and oil by putting Phyllis King in fear. Defendant selected the bottles from the store shelves and carried them to the check-out counter. Threatening King with what she believed to be a gun, he carried the bottles out of the store without paying for them. It is of no consequence that defendant threw these bottles out of the car at a later point in time when King may no longer have been in fear for her safety. Once defendant gained control of the bottles, even for an instant, the taking was complete, *e. g., State v. Murray,* 280 S.W.2d 809, 812 (Mo.1955), and once he moved the bottles while in his control, however slightly, the asportation was complete. *See, e. g., State v. Knabe, supra* at 592.

Defendant also attacks the evidence supporting the taking of the money. Defendant argues that he did not "take" the money until King refused to accept it from him at the time they parted company. We disagree. King did carry the money from the store and did place it on the seat of the car. However, proof of either the element of taking or the element of asportation is not obviated simply because King, driven by fear, physically transported the money from the cash register to the car. King performed this act because of fear engendered by defendant. She was simply defendant's instrument acting subject to his will and direction and not her own. *See People v. McGuire,* 39 Mich.App. 308, 197 N.W.2d 469, 473 (1972); *People v. Alexander,* 17 Mich.App. 30, 169 N.W.2d 190, 191 (1969). The element of taking in robbery does not require the robber's manual possession of the property. It is sufficient if the robber has acquired dominion and control over the property. It is no less a taking simply because the property is physically taken and moved by another person, even the victim who acts only under the robber's direction and control. *People v. Price,* 25 Cal.App.3d 576, 102 Cal.Rptr. 71, 72 (1972); *see State v. Carter,* 571 S.W.2d 779, 783 (Mo.App.1978); *People v. Ragland,* 34 Mich. App. 624, 192 N.W.2d 5, 5 (1971). *Compare*

1. Now § 569.020 RSMo 1978. All statutory references are to RSMo 1969 unless otherwise designated.

2. Robbery is repeatedly defined as larceny by fear or violence. *See, e. g., State v. Lasky,* 133 S.W.2d 334, 335 (Mo.1939); *State v. Manns,* 533 S.W.2d 645, 648 (Mo.App.1976). Prior to our present Criminal Code, common law larceny found its equivalent in statutory stealing. *State v. Eye,* 415 S.W.2d 729, 730 (Mo.1967).

*State v. Hayes,* 518 S.W.2d 40 (Mo. banc 1975) (symbolic possession will not sustain robbery conviction). The robbery here was complete the moment defendant forced King to take the money from the cash drawer and leave the store with it.[3] Defendant's subsequent offer of the money to King cannot erase the offense. *See State v. Murray, supra* at 812; *State v. Charles,* 537 S.W.2d 855, 857 (Mo.App.1976).

■ Defendant next argues the trial court erred in giving Instruction No. 5, the verdict director for robbery in the first degree, because there was no evidence showing the soda, the Wesson oil and the money were taken from Phyllis King by causing her to fear immediate injury to her person. Our previous discussion regarding the sufficiency of the evidence to sustain a conviction of robbery, in particular, the element of "taking," disposes of this contention. Instructions must be based upon substantial evidence and reasonable inferences. *State v. Fleming,* 577 S.W.2d 174, 176 (Mo.App. 1979). There was substantial evidence showing the merchandise and money in question were taken from King by placing her in fear of immediate injury to her person and, thus, defendant's point is without merit.

Defendant also complains Instruction No. 5 varied fatally from the information. Defendant raises this issue as plain error because he failed to raise it in his motion for a new trial. The information charged defendant with taking the property in question "with the felonious intent to deprive the *owner* of the use thereof ...." Instruction No. 5 required the jury to find defendant took the property "with the intent to permanently deprive *Phyllis Ann King* of the property." (emphasis added). Although the language of the charge and the instruction differ, we fail to see the significance of this difference. Defendant's argument sheds little light for it is neither clear nor explicit. Defendant fails to explain the significance of the language difference and fails to demonstrate how this difference was prejudicial. We shall, however, briefly explore the possibility the variance may have been material and, therefore, prejudicial. *See State v. Johnson,* 606 S.W.2d 655, 657 (Mo.1980); *State v. Collins,* 519 S.W.2d 362, 364 (Mo.App.1975).

■ Robbery requires proof of the felonious taking of the property "of another" by fear or violence. § 560.120. The phrase "of another" refers to possession rather than to title or ownership. Thus, robbery is an offense against the right to possession, *State v. Manns, supra* at 648, and ownership of the property is not an element of robbery. *State v. McMillan,* 593 S.W.2d 629, 636 (Mo.App.1980). There is no question that King was in rightful possession of the stolen property. Instruction No. 5 conformed to the evidence and properly presented to the jury all the material elements of robbery. Indeed, as submitted, the instruction tracked MAI–CR 7.60, which was the only instruction applicable under the circumstances. The variance between the charge and the instruction does not warrant reversal because the variance concerns ownership, an immaterial and non-contested issue. *State v. Wright,* 476 S.W.2d 581, 583–584 (Mo.1972); *see State v. Manns, supra* at 649. This variance on an immaterial issue could not have affected defendant's rights and he, therefore, suffered no manifest injustice. *State v. Johnson, supra* at 657; Rule 29.12. This point has no merit.

Defendant next contends the trial court improperly restricted his voir dire examination of the jury panel. During voir dire, counsel for defendant stated: "I expect the court will instruct you that if [defendant] doesn't testify that you can't give that any weight at all in your deliberations." The state objected to the statement on the ground that defense counsel was instructing

---

**3.** Arguably, the robbery was complete at the moment defendant ordered King to place the bills on the counter for defendant, at that moment, acquired the exclusive power to control the bills even though he did not touch them or pick them up. *See Commonwealth v. Flowers,* 1 Mass.App. 415, 298 N.E.2d 898, 901 (1973); *People v. McGuire, supra,* 197 N.W.2d at 473; *People v. Smith,* 132 Ill.App.2d 657, 270 N.E.2d 136 (1971).

the jury about the law. The trial court sustained the objection on the ground that defense counsel was anticipating the instructions to be given by the court. Counsel for defendant then stated: "[O]n that objection, I want to make an offer that my next question would be may I see the hands of those who would not follow that instruction if it is given by the court." The trial court responded: "The objection was sustained." This precluded counsel from inquiring whether the veniremen would follow an instruction on defendant's right not to testify. Defendant claims these rulings prejudiced him.

█ Voir dire examination is conducted under supervision of the trial court. The nature and extent of the examination is controlled by the discretion of the court and we will not disturb the court's exercise of its discretion unless manifestly abused. *State v. Lumsden*, 589 S.W.2d 226, 229 (Mo. banc 1979). No abuse of discretion occurred here.

█ The trial court properly sustained the state's objection to defense counsel's first statement about the instruction he expected the court would give. Counsel is allowed reasonable latitude in examining prospective jurors. There are, however, limits to the scope of permissible examination. Counsel may not tell the veniremen what the court's instructions will be, nor may counsel inform the jury of the law applicable to the case. *Thompson v. State*, 582 S.W.2d 700, 701–702 (Mo.App.1979); *State v. Knapp*, 534 S.W.2d 465, 468 (Mo. App.1975). By informing the panel that he expected the trial court to instruct on the issue of defendant's right to refrain from testifying, defense counsel, in effect, told the jury what the court's instruction would be and what law would be applicable to the case. Thus, defense counsel exceeded the scope of permissible voir dire examination, and the trial court properly limited this inquiry.

Arguably, the trial court should have allowed defense counsel to ask his next question: whether the panel would follow an instruction outlining defendant's right not

to testify if given by the court. This question appears to have been properly phrased. *See State v. Mosier*, 102 S.W.2d 620, 624 (Mo.1937); *see also State v. Smith*, 422 S.W.2d 50, 68 (Mo. banc 1967). However, this question was rendered moot. Defendant chose to testify and, thus, the jury was never instructed about defendant's right not to testify. We can find no prejudice worked against defendant by the trial court's rulings, and defendant has not demonstrated any prejudice.

Finally, defendant contends the trial court improperly restricted his counsel's closing argument. During closing argument, the trial court refused to allow defense counsel to try on the blue jean shirt jacket which had been admitted into evidence. Defendant argues his counsel's use of the jacket was proper argument because defendant had tried on the jacket at the state's request during cross-examination and, in its argument, the state had argued it was no coincidence the jacket fit defendant "like a sock on a foot." By precluding his counsel from trying on the jacket, defendant reasons, the court tacitly acknowledged the jacket fit only defendant and this acknowledgement, defendant argues, necessarily prejudiced him. We disagree.

█ During closing argument, defense counsel may demonstrate properly admitted exhibits before the jury. *E. g., State v. Miller*, 542 S.W.2d 322, 323 (Mo. App.1976). More important, defense counsel is entitled, if not obligated, to rebut the state's argument and to argue inconsistencies in the state's case. *State v. Bohannon*, 526 S.W.2d 861, 864 (Mo.App.1975). Defense counsel's attempt to try on the jacket may have been a proper demonstration of a proper argument. From the fact the jacket fit defendant, the state had implied the jacket belonged to him. Defense counsel's attempt to demonstrate the jacket fit him as well as defendant was an attempt to rebut and weaken the state's implication. Certainly, it was permissible for defense counsel to demonstrate the weakness of the state's argument by showing the jacket also fit him. However, this demonstration

merely dramatized the argument that the jacket fit other people as well as defendant. The court did not preclude defense counsel from making this argument. It merely precluded him from personalizing or dramatizing it.

On the present record, we cannot say the court committed error by precluding the demonstration. The propriety of oral argument is addressed to the discretion of the trial court, and we will not interfere absent an abuse of that discretion to the defendant's prejudice. *State v. Treadway,* 558 S.W.2d 646, 650 (Mo. banc 1977); *State v. Hunter,* 560 S.W.2d 48, 51 (Mo.App.1977).

Furthermore, the victim, Phyllis King, was with defendant for approximately one and a half hours. She positively identified him. Mr. Timmerman, an eyewitness, identified defendant. This testimony, along with noted physical evidence recovered near the scene of the crime, clearly demonstrate that no prejudice was worked against defendant in placing him at the scene of the crime and labelling him as the culprit.

Judgment affirmed.

SMITH, P. J., and SIMON, J., concur.