STATE of Missouri, Respondent,

v.

Charles S. SMITH, Appellant.

No. WD 32325.

Missouri Court of Appeals,
Western District.

Aug. 10, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Aug. 31, 1982.

Application to Transfer Denied
Oct. 18, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Charles S. Smith was found guilty by a jury of second degree murder.[1] The jury assessed punishment at 210 years imprisonment and the court pronounced sentence for the same term.

On this appeal Smith contends he should have been allowed to argue to the jury that he volunteered to take a lie detector test and that his confession was inadmissible because he was arrested on another charge when the statement was given. Affirmed.

Smith does not question the sufficiency of the evidence. On February 24, 1977, Robert Carter discovered the body of his wife in the bathtub of their south Kansas City home. There were bruise marks on the

1. Smith was previously convicted of the same crime, but that conviction was reversed by this court because of the unconstitutional selection of jury panels in Jackson County. *State v. Smith*, 595 S.W.2d 764 (Mo.App.1980).

face and tiles around the bathtub were broken. The autopsy revealed that Mrs. Carter had died of drowning. The bruises on her face were found to be inconsistent with a fall but were consistent with human fingers.

Smith was a bus driver for the Center School District and picked up the Carter's young son each morning. On March 4, 1977, Smith was arrested on a warrant from Kentucky for a parole violation. After his arrest on that warrant Smith was turned over to the Kansas City Police Department. After he was given his *Miranda* Warning and after he had signed a waiver by which he agreed to answer questions, Smith admitted that he had been having an affair with Mrs. Carter and killed her after an argument.

During the trial the State called Carmon Johnston a police officer of Kansas City. On direct examination the State brought out only that Johnston had been given the *Miranda* Warning prior to making a statement, but did not bring out the department Johnston worked in or the fact that he operated a lie detector machine. On cross examination counsel brought out that Johnston operated a lie detector machine and inquired if Smith agreed to take a lie detector examination voluntarily. Johnston said that he did. On recross-examination the State brought out that Johnston had obtained a result from the examination but on objection of Smith's counsel the court excluded the nature of the result. On re-cross counsel again brought out twice from Johnston that Smith had volunteered to take the lie detector test.[2]

The State filed a motion in limine to prohibit counsel from making any reference during final argument to the lie detector test. The court sustained that motion. Smith now contends that the court erred in refusing to allow him to argue to the jury that he voluntarily took a lie detector test because only an innocent person would volunteer to take such a test. He further contends that he should have been allowed

to argue that this would also show that his statement was involuntary and that he was required to counter the inference that Smith had failed the test.

 It is well known that the propriety of oral argument is vested in the discretion of the trial court and an appellate court will not interfere absent an abuse of that discretion to the defendants prejudice. *State v. Beatty,* 617 S.W.2d 87, 93[14, 15] (Mo.App. 1981). It is further settled that the results of the polygraph examination are not admissible, even if counsel stipulates that the results may be admitted. *State v. Biddle,* 599 S.W.2d 182, 188[3] (Mo. Banc. 1980). In *State v. Bibee,* 496 S.W.2d 305, 316[21][22] (Mo.App.1973) the defendant contended he was entitled to show that he had offered to take a lie detector test because this would show his sincere feeling about his denial that he had committed the crime. The court held the refusal of this evidence was proper because the accused had nothing to lose by such a showing when the result of the test would be inadmissible. The court further stated this was purely self-serving.

 Here it was Smith's counsel who elicited the fact that Johnston was an operator of a lie detector machine and that Smith had voluntarily taken the test. Smith was able to present to the jury information which would have been excluded on proper objection under the holding in Bibee. However, the fact that Smith was able to place before the jury the fact that he voluntarily took the test does not mean that he was entitled to make an argument that the jury could infer from this that he was innocent. This would have been a patently false and misleading argument, but more importantly would have been unfair because the result of the test was not given to the jury and the State would have been precluded from divulging any result. Thus Smith would have been free to argue that he must be innocent because of volunteering to take a lie detector test, secure in the knowledge that his argument could not be

---

2. Although the result of the test was kept from the jury, the record of a pretrial hearing on a

motion to suppress reflects that Smith had been advised that he had failed the test.

countered by the result of that test. In addition the inference Smith seeks to draw simply does not follow. The trial court correctly observed that there is no reasonable inference that can be drawn from the fact that Smith volunteered to take the test, and such an argument would only serve to sidetrack the jury on a false issue.

Furthermore, this argument did not bear on the voluntary nature of the statement that Smith gave, nor was there any necessity to counter any inference that Smith had failed the test when there was no evidence before the jury as to the test result. The court did not abuse its discretion when it prohibited counsel from making the desired argument.

■ Smith contends that his confession was inadmissible because it was made as a result of an unlawful arrest. Smith states that there was no probable cause to arrest him for the Carter murder and therefore the police had no right to question him about that crime. As previously mentioned, Smith was arrested on a warrant from Kentucky for a parole violation and he does not contend that there was any infirmity in the arrest under that warrant. Smith contends, however, that since he was arrested for a parole violation, while he was in custody on that charge he could not be questioned about any other crimes. That same contention was raised and rejected in *State v. Fields,* 536 S.W.2d 56, 58[2, 3] (Mo.App. 1976). After Smith had been arrested under a proper warrant from Kentucky and after his *Miranda* rights had been observed, he was subject to questioning about other crimes.

The judgment is affirmed.

All concur.